# United States District Court, Northern District of Illinois ORIGINAL

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | Morton Denlow |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4427 | **DATE** | 3/27/2002 |
| **CASE TITLE** | | EEOC vs. International Profit Associates, Inc. | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion to compel Plaintiff's production of interview notes [27-1] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | APR 03 200 | 41 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | |
| ✓ | Copy to judge/magistrate judge. | | 3/27/2002 | |
| | | 02 MAR 28 PM 5: 09 | date mailed notice | |
| DK | courtroom deputy's initials | Date/time received in central Clerk's Office | DK mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | No. 01 C 4427 |
| and | ) ) | Magistrate Judge Morton Denlow |
| MARIAN TOWNSON, | ) ) | |
| Plaintiff-Intervenor | ) ) | |
| v. | ) ) | |
| INTERNATIONAL PROFIT ASSOCIATES, INC., | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This case presents the issue of whether Plaintiff Equal Employment Opportunity Commission's ("EEOC" or "Plaintiff") interview notes obtained from class plaintiffs and prospective witnesses after suit was filed are protected from discovery by Defendant International Profit Associates, Inc. ("IPA" or "Defendant") by the attorney-client or work product privilege. Defendant seeks the interview notes in the course of discovery. Plaintiff objects on the grounds that the interview notes are protected from disclosure by the attorney-client privilege and work product doctrine. This Court holds the interview notes prepared by the EEOC attorneys or their agents are protected material pursuant to the attorney-client privilege and the work product doctrine.

# I. BACKGROUND FACTS

On June 12, 2001, the EEOC filed suit against IPA on behalf of an alleged class of IPA female employees alleging a pattern and practice of unlawful employment practices including intentional discrimination against female employees, sexual harassment, threats, and failing to take remedial action to eliminate the harassment. (Complaint, ¶ 7). IPA is a management consulting company, founded in 1991. The EEOC is an administrative agency that conducts investigations and files law suits pursuant to charges it receives regarding employment discrimination. (42 U.S.C. § 2000e-4).

In this case, the EEOC received an administrative charge by a former IPA employee. Following procedure, the EEOC investigators or enforcement employees investigated the charge. (29 C.F.R. § 1601.15). As part of the investigation, the enforcement employees conducted interviews of current and former IPA employees and took notes. These interviews took place "pre-suit" and the notes have been produced to IPA pursuant to Federal Rule of Civil Procedure 26. After the investigation was completed, the EEOC determined there was "reasonable cause" to believe discrimination occurred, conciliation failed, and the agency decided to file suit in federal court. (29 C.F.R. §§ 1601.21, 1601.25, 1601.27).

After this lawsuit was filed, the EEOC Legal Division obtained a payroll list from IPA and attempted to communicate with approximately 2000 former and current female IPA employees by sending them a letter and a "Questionnaire for Potential Class Members." (Pl.

Ex. A).[1] After receiving this information, women initiated contact with counsel for the EEOC for the purpose of participating in this lawsuit, by telephone or by returning the questionnaire. The questionnaire contained identification information such as name, social security number, sex, address, telephone numbers, dates worked at IPA, position held, and supervisor's name at IPA. The EEOC produced the questionnaires it has received to IPA and continues to supplement the production of the questionnaires.

Counsel for EEOC and other EEOC employees of the Chicago Legal Division, working under the direction and supervision of EEOC counsel, conducted telephone interviews of the women who responded to the letter. Lead counsel for EEOC instructed the legal staff conducting these interviews to inform each woman that EEOC would represent her if she decided to become a class member and to ask her if she wanted 1) to be a class member, 2) to have EEOC seek relief on her behalf, and 3) to have EEOC represent her in this lawsuit. (Pl. Sur-Reply Ex. A).[2] The EEOC also instructed the interviewers to inform each interviewee that the communications were confidential, but IPA would be provided with a summary of the facts told to EEOC. (*Id.*).

Pursuant to IPA's First Set of Interrogatories, the EEOC provided IPA with the names of over 120 women identified by EEOC as belonging to the class of female employees

---

[1] Pl. Ex. refers to Plaintiff Exhibits attached to Plaintiff's Response to Defendant International Profit Associates, Inc.'s Motion to Compel.

[2] Pl. Sur-Reply Ex. refers to Plaintiff Exhibits attached to the EEOC's Sur-Reply in Support of its Opposition to IPA's Motion to Compel.

3

allegedly subjected to sexual harassment, and factual summaries of their EEOC interviews. The EEOC continues to supplement this information.

The women interviewed by the EEOC can be divided into three groups: 1) alleged class members, 2) prospective witnesses, and 3) woman with no relevant knowledge of the EEOC's claim. The EEOC has provided IPA with the names and summaries of facts for groups one and two. The EEOC has provided no information to IPA with regards to group number three.

Because IPA is not satisfied with the factual summaries of post-suit interviews produced to them, IPA seeks to compel the production of "notes of all interviews with current and former IPA employees, regardless of whether they are members of the purported class and regardless of whether the interview was conducted before or after the complaint was filed." (Def. Mot. Com. p. 1-2).[3] Plaintiff claims these documents are protected by the attorney-client privilege and work product doctrine. Oral argument was held on March 13, 2002 and this Court has reviewed *in camera*, a sample of EEOC's post-suit interview notes.

## II. MOTION TO COMPEL

Defendant seeks the interview notes of former or current IPA employees conducted by the EEOC after the filing of this lawsuit. Plaintiff claims these interview notes are protected by the attorney-client privilege and work product doctrine. The Court will examine

---

[3] Def. Mot. Com. refers to Defendant International Profit Associates, Inc.'s Motion to Compel.

4

these documents under both theories.

A. **Attorney-Client Privilege**

IPA argues the interview notes are not protected by the attorney-client privilege because the statements were not made to an attorney and were not made with the intention of securing legal advice or services, and the EEOC waived the privilege.

1. **The Interview Notes are Protected by the Attorney-Client Privilege**

The Seventh Circuit applies the general principles of attorney-client privilege as outlined by Wigmore:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991). The party seeking to invoke the privilege bears the burden to establish all the essential elements. *Id.* The claim of privilege "must be made and sustained on a question-by-question or document by document basis;" it cannot be a blanket claim. *Id.*

The women who were interviewed in this case contacted the EEOC via returned questionnaires or telephone calls. Subsequently, all of the interview notes in question were taken by EEOC attorneys or legal staff working at the direction of EEOC attorneys after the complaint was filed. During the interviews conducted by EEOC attorneys or legal staff, each woman identified as a class member was asked if she wished the EEOC to act in her behalf in this lawsuit and each class member replied in the affirmative. Pl. Sur-Reply Ex. A ¶ 4.

5

Furthermore, the policy of the EEOC with regards to these interviews was to inform each woman the communications with the EEOC were confidential, but summaries of the facts told to the EEOC would be provided to IPA. *Id.* Therefore, these post-suit interviews fit within the definition provided by Wigmore, and as such, unless waived, are protected by the attorney-client privilege.

Two sets of interviews were completed by the EEOC: first, pre-suit the EEOC enforcement employees, as part of the agency's administrative investigation, investigated the charge prior to the filing of the complaint; second, post-suit the EEOC attorneys and other EEOC employees of the Legal Division working under the direction and supervision of EEOC attorneys conducted interviews, after filing the complaint, based on the return of questionnaires and telephone calls the attorneys received in regards to this case. The EEOC enforcement employees' interview notes (pre-suit) were previously produced to IPA as part of EEOC's Rule 26 disclosures. None of these interview notes were taken by EEOC attorneys or those working within the Legal Division.

Communications between prospective class members and EEOC counsel and their agents are protected from disclosure by the attorney-client privilege.[4] For example, the

---

[4] The attorney-client privilege extended to interview notes taken by nonattorney employees at the Public Guardian's office. *Sharonda B. v. Herrick*, 1998 WL 341801 *5 (N.D.Ill. 1998). *See also*, 8 Wigmore, Evidence § 2301 at 538 (McNaughton Rev. Ed. 1961) (stating "It has never been questioned that the privilege protects communications to the *attorney's clerks* and his other agents ... for rendering his services. The assistance of these agents being indispensable to his work and the communications of the client being often necessarily communicated to them by the attorney or by the client himself, the privilege must include all the persons who act as the attorneys's agents").

6

"questionnaires returned to the EEOC by prospective claimants in an age discrimination suit were protected by a *de facto* attorney-client privilege" in *Bauman v. Jacobs Suchard*, 136 F.R.D. 460, 462 (N.D.Ill. 1990). This Court expressed in oral argument and the *Bauman* court reasoned, employers in these types of cases have available the protection of the attorney-client privilege whereas there is no sound reason why employees would not. *Id.* Therefore, *Bauman* held "communications between the EEOC attorneys and the employees represented in ADEA cases brought by the EEOC are privileged." *Id. See also, EEOC v. HBE Corp.*, 1994 WL 376273 at *2 (E.D.Mo. May 19, 1994) (finding "a number of courts have held that when the EEOC brings suit on behalf of individuals, the communications between the attorneys for the EEOC and the charging party are protected by the attorney-client privilege"); *EEOC v. Johnson & Higgins, Inc.*, 1998 WL 778369 at *4 (S.D.N.Y. Nov. 6, 1998) (noting "the attorney-client privilege can cover communications between EEOC counsel and the employees upon whose behalf it sues"); *EEOC v. NEBCO Evans Distrib., Inc.*, 1997 WL 416423 at *4 (D. Neb. June 9, 1997) (agreeing with and citing *Bauman* infra); *EEOC v. ChemTech Int'l Corp.*, 1995 WL 608333 at *1 (S.D.Tex. May 17, 1995) (finding "because the EEOC and the private citizen have many identical interests, the attorney-client privilege is essentially a joint prosecution privilege that extends to communications between a party and the attorney for a co-litigant").

Lastly, the *Mitsubishi* court reiterated the governing principle regarding communications between claimants and EEOC attorneys; "an attorney has the right to freely

7

communicate with her client with reference to proposed and pending litigation, and this includes the EEOC when it brings a Title VII action on behalf of certain known persons who have or may claim that they have been sexually discriminated against by their employer." *EEOC v. Mitsubishi Motor Manuf. of America, Inc.*, No. 96-1192, slip op. at 6 (C.D.Ill. Oct. 23, 1997). The court further held "communications [between EEOC and the 289 identified claimants] regarding the lawsuit, including upcoming depositions, therefore fall within a permissible range of attorney-client communications" because the 289 identified plaintiffs at some point identified themselves to the EEOC as persons seeking representation to the lawsuit. *Id.* at 7. Similarly, all the women interviewed by the EEOC Legal Division in this lawsuit expressed their desire to be represented by the EEOC. Pl. Sur-Reply Ex. A.

### 2. The EEOC did not Waive the Attorney-Client Privilege

A party waives the attorney-client privilege when it voluntarily produces communications dealing with the same subject matter. *Blanchard v. EdgeMark Financial Corp.*, 192 F.R.D. 233, 236 (N.D.Ill. 2000). The general rule is "[a]ny voluntary disclosure by the holder of the attorney-client privilege is inconsistent with the attorney-client confidential relationship and thus waives the privilege." *Id.*

Defendant asserts the EEOC waived attorney-client privilege when it voluntarily produced pre-suit interview notes of former IPA employees before this lawsuit was filed. The EEOC did not waive attorney-client privilege when it produced in its Rule 26 disclosures the interview notes taken by EEOC enforcement employees prior to the filing of this lawsuit.

None of those interviews were conducted by EEOC attorneys or legal staff working at the direction of the EEOC attorneys. Rather, those interviews were conducted by EEOC enforcement employees during the administrative investigation of whether there was reasonable cause to believe a claim existed. After the enforcement employees determined a reasonable cause existed and conciliation failed, a lawsuit was filed. It is at this point the EEOC Legal Division began its own interviews with potential class members and witnesses. The EEOC attorneys never disclosed its own notes stemming from the interviews EEOC attorneys or their staff completed; therefore, the attorney-client privilege was not waived.

### B. Work Product Doctrine

The work product doctrine, announced in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385 (1947), protects otherwise discoverable documents and tangibles, and was subsequently codified as Rule 26(b)(3) of the Federal Rules of Civil Procedure. *Caremark, Inc. v. Affiliated Computer Services, Inc.*, 195 F.R.D. 610, 612 (N.D.Ill. 2000). Rule 26(b)(3) provides:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

9

Fed.R.Civ.P. 26(b)(3). Information that is merely factual may not be withheld under the work product doctrine, but must be produced through interrogatories or depositions. *Allen v. Chicago Transit Authority*, 198 F.R.D. 495, 500 (N.D.Ill. 2001).

IPA argues the interview notes are not protected by the work product doctrine because the notes were not prepared in anticipation of litigation, the EEOC waived its work product privilege, and IPA's substantial need for the interview notes and undue hardship in obtaining them outweighs the protection of the doctrine. The EEOC asserts the work product doctrine protects its interview notes from disclosure to IPA.

### 1. The EEOC Attorney Interviews Were Prepared in Anticipation of Litigation

The test to determine whether materials were prepared in anticipation of litigation is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Binks Manufacturing Co. v. National Presto Industries, Inc.*, 709 F.2d 1109, 1119 (7th Cir. 1983). To qualify as work product, the material must come into existence because of the prospect of litigation or some articulable claim is likely to lead to litigation. *Id.* at 1120. The work product doctrine extends beyond the attorney to documents prepared by a party's representative or agent. *Trustmark Insurance Co. v. General & Cologne Life Re of America*, 2000 WL 1898518 at *3 note 9 (N.D.Ill. 2000).

In this case, the EEOC attorney interviews occurred after the date the complaint was filed, or post-suit. Therefore, not only was litigation anticipated, but litigation was already

10

underway at the time of the interviews. At the direction of EEOC lead counsel, the legal staff performing these interviews were instructed to "inform each witness at the outset of the interview about the case and the EEOC would represent her if she decides to become a class member... each witness was asked if she wanted to be a class member, to seek relief on her behalf, and to have EEOC represent her in this lawsuit." Pl. Sur-Reply Ex. A ¶ 4. Not only was litigation already in fruition, these interviews produced articulable claims likely to lead to trial. *Binks Manufacturing Co.*, 709 F.2d at 1120.

Moreover, courts apply the work product doctrine to protect these types of documents from discovery. For example, the court in *EEOC v. General Motors Corp.*, 1997 WL 807862 at * 2 (E.D.Mo. Nov. 24, 1997) denied defendant's motion to compel production of completed damages questionnaire because the "questionnaire was protected under the work product doctrine." Similarly, in *EEOC v. Pasta House Co.*, 1996 WL 120648 at *3 (E.D.Mo. Jan. 29, 1996), the court extended work product status to questionnaire responses completed by class members and notes of interviews of class members. This Court agrees and finds the EEOC's Legal Division's interview notes are protected by the work product doctrine.

### 2. The EEOC Did Not Waive Its Work Product Privilege

IPA claims EEOC waived work product privilege when EEOC produced interview notes as part of its Rule 26 disclosure. EEOC argues the interview notes disclosed pursuant to Rule 26 are distinguishable from the post-suit interview notes IPA seeks because the notes come from separate departments within the EEOC with different functions.

11

This Court finds the EEOC did not waive its work product privilege. The interview notes the EEOC produced pursuant to Rule 26 were notes taken by an EEOC investigator as part of an EEOC administrative investigation. During initial investigations the EEOC is a neutral third party, thus the investigations are not conducted in anticipation of litigation. The EEOC cannot litigate without a "reasonable cause" administrative determination, a failure of conciliation, and a subsequent agency decision to file suit. Once the EEOC filed suit in this case, the Legal Division began its own interviews with class members and witnesses, separate and distinct from the interviews taken during the administrative investigation by EEOC investigators. Therefore, the EEOC did not waive its work product privilege by producing its pre-suit notes.

### 3. IPA Does Not Have A Substantial Need or Undue Hardship for the Interview Notes

To overcome the protection of the work product doctrine, the party seeking discovery must show a substantial need for the materials and an inability to obtain the substantial equivalent of the information without undue hardship. *Caremark, Inc. v. Affiliated Computer Services, Inc.*, 195 F.R.D. 610, 614 (N.D.Ill. 2000). This burden is difficult to meet and is satisfied only in "rare situations, such as those involving witness unavailability." *Trustmark Insurance Co. v. General & Cologne Life Re of America*, 2000 WL 1898518 *3 (N.D.Ill. 2000).

IPA claims a substantial need to obtain the post-suit interview notes because the women interviewed may have given statements contradicting the allegations asserted by

EEOC. IPA believes EEOC possesses information that could help IPA and hurt EEOC. IPA also suggests it would endure an undue hardship in attempting to collect the information because IPA has employed thousands of women.

To argue this point, IPA relies on *Equal Employment Opportunity Commission v. Consolidated Edison Company of New York, Inc.*, 1981 WL 212 (S.D.N.Y. 1981). Such reliance is misplaced. *Consolidated Edison* held the work product doctrine overcome by the defendant's "substantial need and the undue hardship involved in attempting to obtain its substantial equivalent." *Id.* at *5. Here, the EEOC has provided IPA with the factual basis for the claims through summaries.

IPA does not have a substantial need for the post-suit interview notes, nor would it undergo an undue hardship in collecting similar information. First, EEOC produced to IPA the interview notes conducted during the pre-suit phase of this case. Second, EEOC produced to IPA the names and factual summaries of the class members and potential witnesses and continues to supplement this information. Third, contradictory to IPA's representation that EEOC has interviewed hundreds or thousands of former IPA employees, EEOC has spoken with fewer than 150 former IPA employees. Fourth, because EEOC provided IPA with all the names of the class members and potential witnesses accompanied by a factual summary of the EEOC post-suit interview, IPA can depose class members and potential witnesses to elicit factual information directly from each of these women.

With regards to group three, the women with no relevant knowledge of the EEOC's

claim, this Court, as described during oral argument, orders EEOC to also provide to IPA the names and a factual summary to IPA of each women in this group, who worked at IPA for at least 30 days, and has information relating to a claim or defense in the case.

## III. CONCLUSION

**Defendant's Motion to Compel Plaintiff's production of interview notes is denied** because the notes from interviews of class plaintiffs and prospective witnesses taken post-suit are protected by the attorney-client privilege and the work product doctrine.

**SO ORDERED THIS 27TH DAY OF MARCH, 2002.**

_Morton Denlow_
**MORTON DENLOW**
**United States Magistrate Judge**

Copies mailed to:

| | |
|---|---|
| Jeanne B. Szromba | Myron M. Cherry |
| Diane Smason | Cary N. Goldberg |
| Equal Employment Opportunity Commission | Myron M. Cherry & Associates, LLC |
| Chicago District Office | 30 North LaSalle Street |
| 500 West Madison Street | Suite 2300 |
| Suite 2800 | Chicago, Illinois 60602 |
| Chicago, Illinois 60661 | |
| | |
| Attorneys for Plaintiff | Attorneys for Defendant |

Edward J. Moran
Law Offices of Edward J. Moran
Three First National Plaza
Suite 5330
Chicago, Illinois 60602

Attorney for Plaintiff-Intervenor