**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 01 C 4427 |
| v. | ) ) | Judge Joan B. Gottschall |
| INTERNATIONAL PROFIT ASSOCIATES, INC., | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This case is an employment discrimination suit brought by the Equal Employment

Opportunity Commission ("EEOC") under Title VII of the Civil Rights Act of 1964, 78

Stat. 253 (codified as amended at 42 U.S.C. § 2000e *et seq.* (2006)) ("Title VII") and the

Civil Rights Act of 1991, 105 Stat. 1072 (codified at 42 U.S.C. § 1981a (2006)).  The

EEOC alleges that, since at least 1991,[1] defendant International Profit Associates, Inc.

("IPA") has engaged in an ongoing pattern or practice of unlawful employment activities

at its business facilities in Illinois.  Specifically, the EEOC accuses IPA of discrimination

on the basis of sex, alleging that IPA's female employees were subjected to a hostile and

abusive work environment because they were exposed to severe and pervasive sexual

harassment at IPA.  The EEOC also alleges that many women at IPA were threatened

with or offered certain employment actions contingent on their performance of sexual

---

[1] There is a discrepancy in the record regarding the time frame at issue in this suit.  According to the EEOC's Second Amended Complaint, the unlawful employment practices it seeks to remedy began in 1991.  However, in the briefing in support of its motion for summary judgment, IPA suggests that none of the claimants in this suit were employed by IPA prior to 1993.  Finally, the EEOC's brief in response to IPA's motion for summary judgment states that the relevant time frame began in 1997.  While the inconsistency is not pertinent to the court's decision on the motions currently before it, the court expects the parties to clarify this issue.

favors. According to the EEOC, IPA was aware that the sexual harassment was occurring but failed to take adequate steps to correct the social climate in its offices. The EEOC filed this suit on behalf of two named plaintiffs and a class of female IPA employees, seeking injunctive relief as well as compensatory and punitive damages.[2]

Each party currently has a motion pending before the court. First, IPA has moved for summary judgment, arguing that certain of the individual claimants who are included in the EEOC's class cannot, as a matter of law, prevail on their Title VII claims.[3] For the reasons that follow, the court denies IPA's motions for summary judgment without prejudice. The parties' briefs are hopelessly confused, and demonstrate that a controlling dispute with regard to IPA's motions is not factual, but rather centers on the parties' differing conceptions of what type of case this is, what methods of proof apply, and how it should be tried. After reviewing the parties' briefs, the court concludes that it is necessary to establish the appropriate legal framework for the trial before ruling on IPA's motions. This opinion resolves a limited number of legal disputes and frames the relevant questions so that the parties can provide useful input on the remaining issues.

---

[2] It warrants mention that, although the EEOC is seeking relief on behalf of a large group of plaintiffs, this is not a true class action. Rather, the EEOC is asserting a claim of continuing sexual discrimination in violation of 42 U.S.C. § 2000e-2(a)(1) (2006), pursuant to section 706(f)(1) of Title VII, 42 U.S.C. § 2000e-5(f)(1) (2006), and does not have to meet the requirements for class certification contained in Rule 23 of the Federal Rules of Civil Procedure. *See Gen. Tel. Co. of the N.W., Inc. v. EEOC*, 446 U.S. 318, 324 (1980); *In re Bemis Co.*, 279 F.3d 419, 421-22 (7th Cir. 2002); *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 899 (7th Cir. 1999). Because the EEOC is seeking relief on behalf of a group of aggrieved individuals, however, the court will refer to the claimants as a "class," as other courts that have considered similar cases have done. *See EEOC v. Dial Corp.*, 156 F. Supp. 2d 926, 946 n.13 (N.D. Ill. 2001); *EEOC v. Mitsubishi Motor Mfg. of Am., Inc.*, 990 F. Supp. 1059, 1076 n.10 (C.D. Ill. 1998). When it is necessary to refer to individual claimants, the court will do so in accordance with the claimant numbers provided in IPA's briefing.

[3] IPA originally moved for summary judgment as to 90 of the 113 total claimants included in the EEOC's class, filing its motions in ten separate "volumes." However, the court struck volumes II through X without prejudice, stating that IPA could reassert the motions contained in those volumes if the arguments were still viable after the court issued its ruling on the first volume. *See EEOC v. IPA*, No. 01 C 4427, doc. 401 (N.D. Ill. July 6, 2006). Thus, the motions currently pending before the court are only those contained in volume I. In volume I, IPA has moved for summary judgment on the individual claims of claimants 1, 2, 4, 6, 7, 9, 10, 14, and 15.

The parties are ordered to provide additional briefing as discussed below. Once the court determines the legal framework that will govern the trial of this case, it will set a new deadline for dispositive motions and the parties may file (or, in IPA's case, perhaps renew) any summary judgment motions that have merit under the legal standard set forth by the court.

The second matter before the court is the EEOC's objections to the magistrate judge's order denying its motion to compel. Because the EEOC's objections are pertinent to the briefing on IPA's motions, the court rules on them here as well. The court concludes that the magistrate judge erred in denying the EEOC's motion; it therefore reverses the magistrate judge's order and grants the EEOC's motion to compel the deposition of Suzanne Edwards.

## I. BACKGROUND

As noted, the primary arguments raised in the parties' briefs hinge on legal issues, and it is not necessary for the court to engage in an in-depth discussion of the facts. The purpose of this section is merely to present an overview of the case in order to provide context for the court's ruling.[4]

IPA is an Illinois corporation engaged in business analysis and consulting work. Its headquarters are in Buffalo Grove, Illinois. Since 1998, virtually all of IPA's employees have worked at IPA's facilities in Buffalo Grove, which consist of two separate office buildings. In the first building are IPA's telemarketers (also known as "business coordinators" or simply "BCs") and recruiters. The second building houses

---

[4] The facts recited in this section are taken from a combination of documents, including the EEOC's Second Amended Complaint, IPA's Local Rule 56.1 Statement of Material Facts, the EEOC's Local Rule 56.1(b)(3)(B) Statement of Additional Facts, and the EEOC's Local Rule 56.1(B)(1) Compendium of Exhibits. They are recited in a light most favorable to the EEOC, as is required when ruling on a motion for summary judgment. *See Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005).

IPA's management, human resources department, survey department, inside sales department, consulting department, payroll and accounting department, and clerical support. IPA also employs outside sales representatives, who operate primarily as field representatives and thus do most of their work outside of IPA's business facilities.

The basic structure of IPA's business is as follows. Business coordinators, working via telephone from their offices in Buffalo Grove, set up appointments for outside sales representatives to meet agents of companies with whom IPA wants to conduct business. At these meetings, the outside sales representatives attempt to sell the companies analyses, or surveys, of their businesses, to be conducted by IPA. If an outside sales representative is successful, then IPA sends a survey analyst (also referred to as a "business analyst") to conduct the analysis. If the outside sales representative is unsuccessful, an inside sales representative in Buffalo Grove will attempt to make the sale. After a business analyst completes a survey of a company, the business analyst tries to sell the company consulting hours. If the sale is made, then IPA sends a business consultant to continue working with the company.

The majority of the claimants in this lawsuit were employed either as business coordinators or as inside sales representatives at IPA's Buffalo Grove offices. IPA has a very high turnover rate, particularly in its business coordination department, due to the fast paced and high-pressure environment. IPA employs between 300 and 450 BCs at any given time; according to IPA, it hires approximately 2,000 individuals annually to maintain its business coordination department alone. Company-wide, IPA has hired more than 40,000 employees since 1991.

The EEOC is the federal agency charged with the administration, interpretation, and enforcement of Title VII. *See* 42 U.S.C. §§ 2000e-5, 2000e-6 (2006). This case began in 1998 when two female former IPA employees filed charges with the EEOC complaining that IPA had engaged in unlawful employment practices. After investigating the claims, the EEOC determined that there was reasonable cause to believe that a pattern or practice of sexual discrimination existed at IPA, and ultimately filed the instant suit on behalf of the two women complainants as well as a class of female employees who allegedly were also adversely affected by the unlawful employment practices.[5]

The EEOC accuses IPA of a wide spectrum of severe sexual harassment. The conduct alleged by the EEOC ranges from demeaning insults to sexual assault, and everything in between. According to the EEOC, women at IPA were regularly propositioned for sex, offered job benefits contingent on the performance of sexual acts (and threatened with negative consequences if they did not agree), and even offered money for sex. More than forty women reported being sexually assaulted in one manner or another — the behavior complained of consists of everything from slapping, pinching, touching, and grabbing to outright attempted rape. Women were regularly subjected to offensive sexual comments in the workplace, including explicit observations regarding their appearance and sexual jokes. Sexually offensive and derogatory language was commonly used by male employees, both in general and directed at female employees. Male employees exposed themselves to female employees. Graphic pornography was displayed on office walls. Strippers and prostitutes were hired to perform for male

_____

[5] Pursuant to 42 U.S.C. § 2000e-5(b) and (f)(1), the EEOC is required to meet certain conditions, such as notice, investigation, and an attempt to conciliate, before filing a civil action under section 706.

employees' birthday parties at IPA's offices during business hours.  In short, the EEOC alleges that severe sexual harassment was part of the culture at IPA.

Not only was the sexual harassment at IPA severe, but, according to the EEOC, it was also pervasive and existed at all levels and departments of the company.  The EEOC asserts that the conduct described above was perpetrated by a large number of male IPA employees, including both the claimants' managers and their co-workers.  Indeed, the EEOC details a variety of egregious behavior engaged in by IPA's managing director (a man who owns nearly ninety percent of IPA's stock), several additional managers, and many other IPA employees.  A great deal of the most abhorrent conduct described by the EEOC was allegedly committed by IPA's upper-level management (although lower-level workers are by no means under-represented in the EEOC's allegations).  For example, the EEOC alleges that IPA's managing director and several other senior directors regularly propositioned subordinate employees for sex, offering them job benefits and even money in exchange for sexual favors, sexually assaulted female employees, and used offensive and derogatory language toward the women in IPA's offices.  Thus, according to the EEOC, female employees at IPA were objectified and mistreated from the top down, company wide.

The EEOC also alleges that IPA had full knowledge of the extent to which the sexual harassment was occurring in its offices.  Not only was the sexual harassment pervasive, but, as noted, it was being committed by many of the employees who were in a position to do something about it.  Moreover, many women complained about the behavior to which they were subjected, both to the director of the human resources department and to various managers.  The complaints had no effect, for not only were

they routinely ignored, but many of the women who complained were actually subjected to additional harassment by the managers to whom they complained. In addition, even when complaints were investigated, usually no action was taken, and so harassers were left unpunished and free to continue their behavior.

The EEOC filed this action on June 12, 2001. A great deal of the litigation since that time has taken place before the magistrate judge, to whom the case was referred for discovery supervision. This court has, however, dealt with several discrete motions, such as the EEOC's motion to bifurcate, which the court denied on September 2, 2005, because the EEOC had not provided the court with sufficient information regarding the manner in which this case should be tried. *See EEOC v. Int'l Profit Assocs., Inc.*, No. 01 C 4427 (N.D. Ill. Sept. 2, 2005) (order denying motion to bifurcate). The case emerged from discovery in February of 2005, and, after spending a great deal of time litigating various motions for sanctions, IPA filed the motions for summary judgment that are currently before the court. It is these motions, as well as the EEOC's objections to the magistrate judge's order denying its motion to compel, upon which the court now rules.

## II. ANALYSIS

Although the court has before it IPA's motions for summary judgment, the primary question before the court is not whether genuine issues of material fact exist. Rather, the parties' main dispute centers on the legal framework within which this case must be tried. As shall be seen, the resolution of this issue matters a great deal—in fact, the merits of IPA's motions hinge upon it. The parties have staked out their respective positions vigorously and have provided the court with briefing that is far too

voluminous.[6]  However, the questions that the court must answer are relatively few.

They are: (1) whether IPA may seek summary judgment with respect to individual

claimants in the EEOC's class when the EEOC has accused IPA of tolerating a pattern or

practice of sexual harassment and the EEOC seeks class-wide relief as well as individual

damages; and (2) whether the magistrate judge erred by denying the EEOC's motion to

compel the deposition of Suzanne Edwards.  These issues will be addressed in turn.

### A. IPA's Motions for Summary Judgment are Denied Without Prejudice

As noted previously, the briefing submitted by the parties with respect to IPA's

motions demonstrates that the parties do not share any common view of the governing

law.  Each party presumes a certain legal framework, and as a result they talk past one

another rather than address the difficult questions this case presents.  In fact, the

applicable law is far from settled; this case sits at the crossroads of several distinct lines

of cases, and presents legal issues that are both complicated and novel.  Before the court

can rule on IPA's motions—or, for that matter, do anything else of substance—it must

first determine the legal framework that will govern this case.  Unfortunately, the parties'

briefs provide very little to assist the court in this task, and the court is unwilling to

resolve key questions without meaningful input from the parties.

Before delving into the legal quagmire that this case presents, it is helpful to first

outline some of the key areas of dispute between the parties.  In its opening brief, IPA

---

[6] The court notes that it granted each party leave to file briefing well in excess of what is typically allowed for motions of this sort.  Very little of the additional briefing, however, was helpful to the resolution of the issues before the court.  In fact, the parties used the vast majority of the excess pages they were granted to quibble over extraneous matters.  IPA in particular is guilty of this, having spent a significant portion of its opening brief arguing that the EEOC has behaved improperly during the course of this litigation (an issue that has been before the court, and rejected, several times already) and providing lengthy summaries of cases it feels are similar to this one.  In the court's opinion, the parties could have elucidated the relevant issues more effectively with half the briefing they provided.  The court expects future submissions to be far more concise and well-directed, and the parties should not expect motions for additional pages to be granted as a matter of course.

argues that certain individual claimants' allegations do not establish harassment that is severe or pervasive[7], based on sex[8], or sufficiently specific[9] to be actionable under Title VII.[10] IPA's arguments all boil down to a single proposition: although the EEOC has brought this suit on behalf of a class of claimants, when each individual claimant's allegations are viewed in isolation it appears that a number of the claimants cannot establish a Title VII violation. IPA thus seeks to narrow the class by excluding those claimants whose allegations are insufficient as a matter of law.

In response, the EEOC argues that it is not required to prove that the sexual harassment to which each and every individual claimant was exposed is actionable under Title VII. The EEOC points out that it has alleged that IPA engaged in a pattern or practice of sexual discrimination. According to the EEOC, the relevant inquiry under the pattern or practice theory is whether sexual harassment was the standard operating procedure at IPA, and this inquiry focuses on the entire work environment rather than

---

[7] In volume I, IPA raises this argument with respect to claimants 1, 2, 4, 6, 7, 9, 10, 14, and 15.

[8] In volume I, IPA raises this argument with respect to claimants 1, 2, 4, and 6.

[9] In volume I, IPA raises this argument with respect to claimants 4, 6, 7, 9, and 14.

[10] IPA also argues that certain claimants' suits are barred because it took remedial action to redress the alleged harassment. In Volume I, IPA raises this argument only with respect to claimant 10. IPA is correct that remedial action may, under certain circumstances, serve as an affirmative defense to a Title VII claim based on hostile work environment. *See, e.g.*, *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998) (an employer may be held vicariously liable for a hostile work environment created by a supervisory employee, but, so long as no tangible employment action was taken, may prove as an affirmative defense that (1) the employer acted reasonably to prevent and promptly correct the offensive behavior; and (2) the plaintiff unreasonably failed to take advantage of preventive opportunities offered by the employer); *Tutman v. WBM-TV, Inc.*, 209 F.3d 1044, 1048 (7th Cir. 2000) ("[An] employer can avoid liability for its employees' harassment if it takes prompt and appropriate corrective action reasonably likely to prevent the harassment from recurring."). However, in a pattern or practice action, which alleges systemic wrongdoing, courts have held that the employer must demonstrate that *systemic* remedial action was taken. *See, e.g.*, *EEOC v. Dial Corp.*, 156 F. Supp. 2d 926, 953, 956 (N.D. Ill. 2001) (employer must show company-wide remedial action to counter pattern or practice liability). Thus, IPA's argument that it took proper remedial action with respect to claimant 10 is not a defense to the pattern or practice aspect of this case. Whether IPA can move for summary judgment as to claimant 10's individual claim on the basis of remedial action prior to the trial of the pattern or practice portion of this case depends on the applicable legal framework—specifically, what effect a pattern or practice finding in favor of the EEOC would have on the individual claimants' cases. This, as noted below, is a question left open by this opinion.

individual experiences.[11]  Under the EEOC's theory, the question of whether the sexual harassment alleged in this case violates Title VII is answered by examining the totality of the class members' circumstances rather than those of the individual class members.

IPA's reply points out that the EEOC seeks not only class-based equitable relief, as authorized by section 706(g) of Title VII, 42 U.S.C. § 2000e-5(g) (2006), but also individual relief in the form of punitive and compensatory damages, as authorized by 42 U.S.C. § 1981a (2006).  IPA agrees, at least implicitly, that the EEOC can proceed under the pattern or practice theory to obtain equitable relief that will apply to the entire class, but argues that the EEOC must prove that IPA violated Title VII with respect to each individual claimant if it wishes to recover individual damages under section 1981a.  In its sur-reply, the EEOC agrees that it is required to establish that the individual claimants are entitled to section 1981a damages.  However, the EEOC argues that it need not establish every element of each claimant's case in order to do so.  According to the EEOC, in a hostile work environment sexual harassment case brought under the pattern or practice theory, certain elements of the cause of action are proven with respect to the class.  If a

---

[11] The court notes that the EEOC's complaint, as in many sexual harassment cases, seems to allege both *quid pro quo* and hostile work environment theories of sexual harassment.  In other words, the EEOC alleges both that its class members were subject to negative employment actions if they did not accede to sexual demands and that its class members were exposed to a sexually abusive severe and hostile work environment in general.  As the United States Supreme Court has noted, the distinction between these two types of sexual harassment is "of limited utility" because both are actionable under Title VII.  *Burlington*, 524 U.S. at 751.  According to the *Burlington* Court, the terms "are helpful, perhaps, in making a rough demarcation between cases in which threats are carried out [*quid pro quo* cases] and those where they are not or are absent altogether [hostile work environment cases]."  *Id.*  The distinction is relevant when determining whether there has been an explicit or a constructive alteration in the terms or conditions of employment under 42 U.S.C. § 2000e-2(a)(1) (2006), and thus "the terms are relevant when there is a threshold question whether a plaintiff can prove discrimination in violation of Title VII."  *Id.* at 752, 53.  For present purposes, the distinction is immaterial; the parties' arguments are limited to the hostile work environment theory and the EEOC's response memorandum suggests that this is the only theory upon which it relies.  The distinction would be relevant to the proof required at trial, however, for, as discussed in further depth below, the hostile work environment theory—in contrast to the *quid pro quo* theory— "requires a showing of severe or pervasive conduct."  *Id.* at 754.  Thus, if the EEOC intends to prove its pattern or practice case by relying on the *quid pro quo* theory, it must make its intentions clear in the next round of briefing.

defendant is found to have engaged in a pattern or practice of discrimination with respect to a class of claimants, the court is then required to shift certain burdens to the defendant and apply certain presumptions in favor of the individual plaintiffs on their individual claims. According to the EEOC, the adjudication of individual section 1981a damages is not the same in a pattern or practice case as it would be in a case brought by a single plaintiff.

As the foregoing demonstrates, the parties have very different views of how the law should operate in this case. In order to put them on the same page to the extent possible and lay out the specific legal issues that this opinion leaves unresolved, it is necessary to engage in a fairly complex discussion of Title VII litigation. The following examines: (1) the pattern or practice theory of discrimination; (2) the hostile work environment theory of sexual harassment; and (3) the application of the pattern or practice theory to a hostile work environment sexual harassment case, taking into account that the EEOC seeks individual relief under § 1981a in addition to class-based equitable relief.

### 1. The Pattern or Practice Theory of Employer Liability

The term "pattern or practice" originated with section 707 of Title VII, 42 U.S.C. § 2000e-6 (2006). As originally drafted, section 707(a) authorized the United States Attorney General to bring a civil action seeking injunctive relief "whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter, and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described." *Id.* §2000e-6(a). The "pattern or practice"

language was intended to apply to "repeated, routine" incidents, such as where "a company repeatedly and regularly engaged in acts prohibited by [Title VII]." *King v. Gen. Elec. Co.*, 960 F.2d 617, 622 (7th Cir. 1992) (quoting 110 Cong. Rec. 14270 (1964) (Statement of Senator Humphrey)). Thus, the pattern or practice action is designed to provide a remedy when an employer has engaged in unlawful employment practices, as defined by 42 U.S.C. § 2000e-2(a) (2006), that are systemic and widespread.

In *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977), the United States Supreme Court set forth the seminal "pattern or practice" paradigm. In *Teamsters*, the EEOC brought suit under section 707, alleging that a company and a union had engaged in a pattern or practice of discriminatory hiring, assignment, and promotion policies against minority workers, and sought both injunctive and specific relief.[12] *Id.* at 328-29. The Court noted that, under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the EEOC bore the burden of establishing a *prima facie* case of unlawful discrimination. *Id.* at 336. In a pattern or practice case, this requires the EEOC to show that the employer regularly engaged in purposeful discrimination of a group protected by Title VII. *Id.* at 335, 360. To meet this standard, the EEOC must "prove more than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts." *Id.* at 336. Rather, the EEOC must prove, by a preponderance of the evidence, that "discrimination was the company's standard operating procedure the regular rather than the unusual practice." *Id.* To do so, the EEOC "is not required to offer evidence that each person for whom it will ultimately seek relief was a victim of the employer's

---

[12] The Court noted that the EEOC had been substituted as a party following the amendments to section 707, but that the United States had been retained as a party for certain purposes. *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 329 n.1 (1977). In this opinion, the court refers to the *Teamsters* Respondent as the EEOC.

discriminatory policy." *Id.* at 360.  This is because the focus at the initial stage of a pattern or practice case is on the general rather than the specific—in other words, whether discrimination was a regularly followed practice of the employer, not whether the employer discriminated against a particular person.  *Id.*

If the EEOC meets its burden and makes a *prima facie* showing that a discriminatory policy or practice exists, the burden shifts to the employer to disprove the EEOC's case.  *Id.*  To defeat the EEOC's *prima facie* showing, the employer must demonstrate that the EEOC's evidence "is either inaccurate or insignificant."  *Id.* at 360.  Again, the employer's defense must counter the EEOC's showing of a discriminatory pattern rather than simply point out that the employer did not discriminate against certain individuals, for the question is whether a pattern or practice exists, not whether specific employees were subject to discrimination.  *Id.* at 360 n.46.  If the employer fails to defeat the EEOC's *prima facie* case, then the employer may be held liable for violating Title VII.  *Id.* at 361.  A finding that an employer has engaged in a pattern or practice of unlawful discrimination "justifies an award of prospective relief," such as an injunction.  *Id.*

In *Teamsters*, the Court held that the EEOC had met its *prima facie* burden, pointing out that it had presented a large amount of statistical evidence demonstrating the disparities between minority and non-minority employees as well as testimony about specific instances of discrimination.  *Id.* at 337-78.  The Court also found that the employer had failed to rebut the EEOC's *prima facie* showing.  *Id.* at 342-43.  The Court therefore affirmed the decisions of the courts below, finding that the employer was liable

under Title VII because it had engaged in a pattern or practice of unlawful employment discrimination.  *Id.*

Although *Teamsters* held that the employer was liable for unlawful discrimination under the pattern or practice theory, questions of individual relief, such as whether particular employees were entitled to retroactive seniority,[13] had not yet been adjudicated. *Id.* at 362.  The Court remanded the case for trial of the individual issues, noting that "[w]hen the [EEOC] seeks individual relief for the victims of the discriminatory practice, a district court must usually conduct additional proceedings after the liability stage of the trial to determine the scope of individual relief."  *Id.* at 361.  Rejecting the argument that the EEOC would still be required to prove "that each individual was discriminatorily denied an employment opportunity" at the individual stage, the Court stated that once an employer is found to have followed a discriminatory policy it may be presumed that employment decisions with respect to specific individuals were taken in furtherance of that policy.  *Id.* at 361-62.  Therefore, the Court held that, once the EEOC established "that an alleged individual discriminatee unsuccessfully applied for a job, and therefore was a potential victim of the proved discrimination," the burden would be "on the employer to demonstrate that the individual applicant was denied an employment opportunity for lawful reasons."[14]  *Id.* at 362.  If the employer in fact offered a non-

---

[13] In *Teamsters*, the EEOC alleged that the employer had hired minorities as servicemen or local drivers rather than as line drivers (which were higher paying and more desirable positions), and that the collective bargaining agreements between the employer and the union forced those servicemen or local drivers who applied for a transfer to the position of line driver to forfeit their seniority.  431 U.S. at 329-30.  In addition to injunctive relief, the EEOC sought an order allowing the individual class members to transfer to line driver jobs with full seniority.  *Id.* at 331-32.

[14] The Court also held that individual claimants who had not applied for line driver positions could seek retroactive seniority if they could prove that they had been deterred from applying by due to unlawful discrimination.  *Teamsters*, 431 U.S. at 367-68.

discriminatory reason for denying the individual claimant's application, the claimant would then be entitled to offer evidence that the reason was pretextual. *Id.* at 362 n.50.

As discussed above, the EEOC argues that this case should proceed under the pattern or practice theory of employer liability outlined in *Teamsters*. At the outset, it should be noted that the EEOC brought this action pursuant to section 706 of Title VII, 42 U.S.C. § 2000e-5 (2006), not section 707. Under section 706, when "a person claiming to be aggrieved" files a charge with the EEOC "alleging that an employer . . . engaged in an unlawful employment practice," the EEOC is empowered to bring a civil action on the basis of the charge, so long as certain prerequisites to suit are met. *Id.* § 2000e-5(b), (f)(1). In contrast with section 707, however, section 706 does not explicitly authorize the EEOC to bring suit to remedy a "pattern or practice" of discrimination. Thus, an implicit question raised by IPA's initial briefing is whether the EEOC can rely on the "pattern or practice" theory when it has expressly stated that this suit is not premised on section 707.[15] Although IPA conceded in its reply brief that "the EEOC may have a right to bring a 'pattern or practice' claim," IPA's Reply Br. at 4, the court will nonetheless address this issue to provide context for the remainder of this opinion clarify the statutory basis for the EEOC's suit.

As originally drafted, Title VII gave the EEOC only the authority to investigate and attempt to conciliate charges of discrimination — as noted, the authority to bring civil suits initially belonged to the Attorney General and to individual plaintiffs. *See*

---

[15] The statutory basis for the EEOC's suit has been in issue for some time; when it denied the EEOC's motion to bifurcate, the court noted, "From the start of this case, there has been confusion about the statutory basis upon which the EEOC is proceeding." *EEOC v. Int'l Profit Assocs., Inc.*, No. 01 C 4427 (N.D. Ill. Sept. 2, 2005) (order denying motion to bifurcate). The court noted that the EEOC had recently clarified the issue by seeking leave to file a second amended complaint that relied upon only section 706. *Id.* The court did not express an opinion as to whether the EEOC can proceed on a pattern or practice basis under section 706, but denied the EEOC's motion to bifurcate because the EEOC had failed to provide the court with specific information regarding how the class issues and individual issues should be treated.

*EEOC v. Waffle House, Inc.*, 534 U.S. 279, 286 (2002); *Gen. Tel. Co. of the N.W., Inc. v. EEOC*, 446 U.S. 318, 327 (1980). Congress, however, shortly became convinced that the EEOC should be granted more meaningful enforcement powers. *See Gen. Tel.*, 446 U.S. at 325-26. Thus, in 1972 Congress passed a series of amendments that effected a sea change in Title VII litigation. The purpose of the amendments was "to implement the public interest [in employment equality] as well as to bring about more effective enforcement of private rights." *Id.* at 326. Therefore, section 706 was amended to authorize the EEOC to sue "private employers reasonably suspected of violating Title VII." *Id.* at 325; *see also EEOC v. Harvey L. Walner & Assoc.*, 91 F.3d 963, 967 (7th Cir. 1996) (same). This had the effect of making the EEOC the chief enforcer of Title VII; as noted in *General Telephone*, "[t]he EEOC was to bear the primary burden of litigation."[16] 446 U.S. at 326. Under section 706, the EEOC acts "at the behest of and for the benefit of specific individuals," *id.*, because a section 706 suit is brought pursuant to a charge filed by "a person claiming to be aggrieved," 42 U.S.C. § 2000e-5(b). However, the EEOC "acts also to vindicate the public interest in preventing employment discrimination." *Gen. Tel.*, 446 U.S. at 326. A section 706 suit is therefore brought in the EEOC's own name, and because the EEOC is an enforcement agency rather than a representative, it is not required to meet the strictures of Rule 23 of the Federal Rules of Civil Procedure when it sues on behalf of a class of aggrieved individuals. *See, e.g.*, *Waffle House*, 534 U.S. at 288 (the EEOC is "not required to comply with Rule 23 because it 'need look no further than § 706 for its authority to bring suit in its own name

---

[16] The amendments to section 706 "did not transfer all private enforcement to the EEOC and assign to that agency exclusively the task of protecting private interests." *Gen. Tel. Co. of the N.W., Inc. v. EEOC*, 446 U.S. 318, 326 (1980). Rather, "[t]he EEOC's suit was intended to supplement, not replace, the private action" already authorized by section 706. *Id.*

for the purpose of, among others, of securing relief for a group of aggrieved individuals'" (quoting *Gen. Tel.*, 446 U.S. at 324, 326)); *In re Bemis Co.*, 279 F.3d 419, 421 (7th Cir. 2002) (noting that the EEOC is not a class representative even though section 706 suits are brought in its name and that, under *General Telephone*, "the EEOC is indeed exempt from Rule 23").

"The 1972 amendments, in addition to providing for a § 706 suit by the EEOC pursuant to a charge filed by a private party, transferred to the EEOC the Attorney General's authority to bring pattern-or-practice suits on his motion." *Gen. Tel.*, 446 U.S. at 328; *see also* 42 U.S.C. § 2000e-6(c) (transferring powers of Attorney General to EEOC). Therefore, the EEOC is now empowered to bring suit on its own initiative under section 707 as well as pursuant to a charge filed under section 706. *See, e.g.*, *Harvey L. Walner*, 91 F.3d at 968 (noting that the amendments "also transferred to EEOC authority previously vested in the Attorney General under § 707 of Title VII to institute 'pattern or practice' lawsuits on its own initiative—i.e., without certain of the prerequisites to a civil action under § 2000e-5(f)"). As with section 706, the EEOC is not required to meet the requirements of Rule 23 to bring a section 707 suit. *See Gen. Tel.*, 446 U.S. at 328.

The primary distinction between a suit brought under section 706 and a suit brought under section 707 does not pertain to the legal theory under which the EEOC may proceed. Rather, the difference is that under section 707 the EEOC proceeds on its own motion while under section 706 the EEOC acts on a charge filed by aggrieved individuals, and thus acts (at least in part) for their benefit; under section 706, the EEOC

also must meet certain prerequisites before it brings suit.[17] *Compare* 42 U.S.C. § 2000e-6(a) *with* 42 U.S.C. § 2000e-5(b), (f)(1); *see also Harvey L. Walner*, 91 F.3d at 968 (noting that a section 707 suit is initiated by the EEOC and is not required to meet the initial requirements of section 706). However, the EEOC may still rely on the pattern or practice theory when it sues under section 706. In fact, the current version of section 707 provides that the EEOC "shall have authority to investigate and act on a *charge of a pattern or practice* of discrimination, whether filed by or on behalf of a person claiming to be aggrieved or by a member of the [EEOC]. *All such actions shall be conducted in accordance with the procedures set forth in section 2000e-5 of this title*." 42 U.S.C. § 2000e-6(e) (emphasis added). Thus, section 707 itself contemplates that when a charge is filed with the EEOC, and the charge (or the EEOC's subsequent investigation of it) gives the EEOC reasonable cause to believe that the employer is engaging in an unlawful pattern or practice of discrimination, the EEOC will bring the pattern or practice suit on behalf of the group of persons affected pursuant to section 706. *Cf. Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 899 (7th Cir. 1999) (stating that "as the plaintiff in a pattern-or-practice suit under § 706(f)(1) of Title VII . . . the EEOC may seek classwide relief without regard to the standards of Rule 23, for the EEOC does not act on behalf of private parties and a suit under § 706(f)(1) is not a class action) (citation omitted)); *Harvey L. Walner*, 91 F.3d at 968 (noting that, once the procedural requirements of section 706 are met, the EEOC may bring suit under section 706 "in its own name to challenge a practice or policy that represents ongoing discrimination"); *EEOC v. Mitsubishi Motor Mfg. of Am., Inc.*, 990 F. Supp. 1059, 1070-71 (C.D. Ill. 1998) (noting that the EEOC can bring a

---

[17] As will be discussed shortly, there is also a distinction between the sections with regard to the relief that may be sought; the EEOC can seek section 1981a damages when it proceeds under section 706, but not when it proceeds under section 707. *See* 42 U.S.C. § 1981a(a)(1).

"pattern or practice" action under section 706).  The lesson from the foregoing can therefore be summarized as follows: the EEOC may bring suit alleging a pattern or practice of unlawful discrimination under section 706 or section 707, but if the suit arises from a charge filed pursuant to section 706, then the EEOC must meet the prerequisites of section 706 before filing suit.

## 2.  Hostile Work Environment Sexual Harassment

With the statutory basis of this case clarified, it is appropriate to address the specific legal theory upon which the EEOC relies.  As discussed previously, the EEOC alleges that IPA engaged in a pattern or practice of discrimination by tolerating sexual harassment severe and pervasive enough to create a hostile work environment for women at its Buffalo Grove facilities.  The hostile work environment theory derives from 42 U.S.C. § 2000e-2(a)(1) (2006), which provides, in relevant part, that it is an unlawful employment practice "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."  The Supreme Court has said that when a workplace is permeated with discrimination that is so severe or pervasive that the working environment itself becomes hostile or abusive, the terms or conditions of employment are constructively altered and a Title VII violation has occurred.  *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 752 (1998); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1992); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986).

In order to succeed on a hostile work environment claim, an individual plaintiff must demonstrate that the work environment was hostile or abusive from both objective and subjective viewpoints.  *See Harris*, 510 U.S. at 21-22; *Whittaker v. N. Ill. Univ.*, 424

F.3d 640, 645 (7th Cir. 2005). That is, the plaintiff must prove that the complained of conduct is severe or pervasive enough that a reasonable person would find the work environment hostile or abusive. *Harris*, 510 U.S. at 21; *Adusumilli*, 164 F.3d at 361. In addition, the plaintiff must demonstrate that he or she subjectively perceived the conduct to be hostile or abusive. *See Harris*, 510 U.S. at 21-22; *see also Whittaker*, 424 F.3d at 645 (stating, in sexually hostile work environment case, that plaintiff must demonstrate that "she was subjected to unwelcome sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature"); *Nelson v. Foster Wheeler Constructors, Inc.*, No. 97 C 4658, 1998 WL 792474, at *3-4 (N.D. Ill. Nov. 9, 1998) (noting that plaintiff must subjectively perceive the conduct to be abusive).

In considering whether the alleged conduct is objectively severe or pervasive enough to alter the terms or conditions of employment, the court must focus on the totality of the circumstances rather than isolated actions. *See Harris*, 510 U.S. at 23; *see also Whittaker*, 424 F.3d at 645 ("In considering whether the environment was objectively hostile, the court must consider all of the circumstances . . . ." (citation and internal quotation marks omitted)). This is because the "very nature [of hostile work environment claims] involves repeated conduct," and the claims are therefore "based on the cumulative effect of individual acts." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). Therefore, the court must take into account all acts that may be fairly said to contribute to the hostile work environment.[18] *Id.* at 118. In *Harris*, the Court set forth the following non-exclusive list of circumstances for courts to examine in

_____

[18] Thus, in considering the effect of the statute of limitations contained in section 706 on a hostile work environment claim, the Supreme Court held that so long as at least one "act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for purposes of determining liability." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002).

determining whether a hostile work environment exists: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23.

In addition to demonstrating severe or pervasive conduct, a plaintiff that brings a hostile work environment case premised on sexual harassment must also, quite obviously, demonstrate that the severe or pervasive conduct is based on sex—i.e., that the conduct was directed at the plaintiff because of his or her sex. *See Whittaker*, 424 F.3d at 645; *see also Hawkins v. Groot Indus., Inc.*, No. 01 C 1731, 2003 WL 22078382, at *6 (N.D. Ill. Sept. 5, 2003) (noting, in racially hostile work environment case, that plaintiff was required to demonstrate that harassment was based on race). Finally, the plaintiff must demonstrate that there is a basis for holding the employer liable for the sexual harassment. *See Whittaker*, 424 F.3d at 645. When the plaintiff's suit is premised on sexual harassment perpetrated by a co-worker, the plaintiff must demonstrate that the employer was negligent in order to hold the employer liable. *See Adusumilli*, 164 F.3d at 361. In other words, the plaintiff must demonstrate that the employer knew or should have known about the sexual harassment but failed to take appropriate action to prevent it. *See EEOC v. Dial Corp.*, 156 F. Supp. 2d 926, 952-53 (N.D. Ill. 2001). When a plaintiff's suit is premised on sexual harassment by a supervisor, the employer may likewise be held liable on the basis of negligence. *See Burlington*, 524 U.S. at 759. However, employers may also be held liable for harm caused by supervisors under agency principles. *Id.* at 764. Therefore, employers may, subject to certain defenses depending on whether tangible employment action was taken or not, be held vicariously

liable for harassment perpetrated by supervisors. *Id.*; *see also Adusumilli*, 164 F.3d at

361 (noting that "employers are vicariously liable for hostile environment sexual

harassment by supervisors").

The elements of a claim for hostile work environment based on sexual harassment

discussed above are well-settled and are not in dispute in this case. What is in dispute is

how a hostile work environment case brought by the EEOC should be tried when the

EEOC proceeds under the pattern or practice theory, and it is to this issue that the court

now turns.

### 3. Hostile Work Environment and the Pattern or Practice Theory

As the summary of the parties' arguments provided at the outset of this opinion

demonstrates, the EEOC and IPA have vastly different ideas about what it means to try a

hostile work environment case under the pattern or practice model. As much as it pains

the court to absolve the parties of blame (for their tactics have certainly made the

resolution of this case much more difficult), their disagreement is not only the result of

litigiousness, but stems also from the fact that this case sits at the intersection of two lines

of Supreme Court doctrine that do not fit together particularly well. The pattern or

practice model is designed to allow the EEOC to prevent systemic, widespread

discrimination, and the relevant inquiry in a pattern or practice action is whether the

employer regularly discriminated against a group protected by Title VII. *See Teamsters*,

431 U.S. at 360-61. To prove a pattern or practice of discrimination, the EEOC does not

have to show that any specific claimant was the victim of discrimination. *Id.* at 360.

Rather, the EEOC must establish that the company's behavior in the aggregate supports

an inference that it had a discriminatory policy. *Id.* at 336. In cases like *Teamsters*,

where the individual plaintiffs' claims focus on the employer's decisions to deny their requests for promotion, the impact of a finding that an employer had a policy of discrimination is obvious—the employer's decisions with respect to the individual claimants are presumed discriminatory because of the policy. *Id.* at 361-62.

The hostile work environment test, on the other hand, is designed to assess—from both objective and subjective viewpoints—whether the specific harassment to which a plaintiff was exposed was so severe or pervasive that it altered the terms or conditions of her employment. *See Harris*, 510 U.S. at 21-22; *Whittaker*, 424 F.3d at 645. In harassment cases, the impact of a finding that a company had a discriminatory policy (presumably of *tolerating* harassment rather than enforcing it; it is hard to believe that any company would actually order its employees to engage in harassment) is less clear. That an employer has a pattern or practice of tolerating harassment by its employees does not necessarily make it any more likely that the harassment to which an individual claimant was exposed was severe or pervasive. Thus, a pattern or practice case based on hostile work environment claims presents a conflict between the consideration of the employer's attitude toward a protected group as a whole and the adjudication of issues that may be unique to each individual perpetrator and each individual claimant. This is a tension that has been recognized by other courts that have considered similar cases. *See, e.g.*, *Mitsubishi*, 990 F. Supp. at 1071 ("The pattern or practice model . . . breaks down for sexual harassment claims . . . because the two seminal cases defining the essence of a claim of sexual harassment—*Meritor* and *Harris*—require consideration of individual issues and defenses particular to an individual claimant." (citations omitted)).

Further complicating matters is the issue of the relief sought by the EEOC, the most contentious issue addressed in the parties' briefs. As noted previously, IPA moved for summary judgment as to a number of the individual claimants in this case, and in response the EEOC argued that it is not required to prove each individual's right to relief because this is a pattern or practice case. In its reply brief, IPA refined its argument, pointing out that the EEOC is seeking compensatory and punitive damages pursuant to section 1981a in addition to the injunctive relief authorized by section 706. According to IPA, the EEOC cannot recover section 1981a damages in a pattern or practice case because section 1981a damages require individualized proof. IPA argues that if the EEOC wishes to pursue individual damages under section 1981a, it must prove each individual claimant's hostile work environment claim in its entirety. The court considers these contentions in turn.

In 1991, Congress amended Title VII by adopting section 1981a, which allows "a complaining party" to recover compensatory and punitive damages in an action brought pursuant to section 706. 42 U.S.C. § 1981a(a)(1). The term "complaining party," as defined in the statute, includes the EEOC. *Id.* § 1981a(d)(1)(A). The Supreme Court discussed the amendments in *Waffle House*, stating, "As a complaining party, the EEOC may bring suit to enjoin an employer from engaging in unlawful employment practices, and to pursue reinstatement, backpay, and compensatory or punitive damages." 534 U.S. at 287. The Court also discussed the *General Telephone* decision, noting that the 1991 amendments took place *after* the Court held in *General Telephone* that the EEOC is not subject to the class certification requirements of Rule 23. *Id.* at 288 (noting that suits brought by the EEOC "should not be considered representative actions subject to Rule

23." (quoting *Gen. Tel.*, 446 U.S. at 326) (internal quotation mark omitted)).  According to the Court, the 1991 amendments were adopted "[a]gainst the backdrop" of, *inter alia*, *General Telephone*, and therefore the 1991 amendments merely expanded the remedies available in certain types of Title VII litigation but did not otherwise alter the Title VII landscape.  *Id.* at 288.

In *Bemis*, a case decided by the United States Court of Appeals for the Seventh Circuit shortly after *Waffle House*, the EEOC sued a company under section 706 on behalf of a class of employees, alleging racial harassment and seeking relief under both section 706 and section 1981a.  279 F.3d at 420.  In an argument strikingly similar to that put forth by IPA here, the defendant contended that the EEOC could not seek section 1981a damages unless it met the class certification requirements of Rule 23 because "the nature and extent of the injuries suffered by the members of the class" would necessarily vary.  *Id.* at 421.  Citing *Waffle House*, the Seventh Circuit rejected the argument, noting that section 1981a merely added to the "arsenal of remedies" available to the EEOC but did not change the manner in which the EEOC is entitled to try its cases.  *Id.* at 422.

*Waffle House* and *Bemis* dispose of IPA's first argument.  IPA agrees that the EEOC is not subject to Rule 23, but IPA's contention—that this case cannot proceed under the pattern or practice theory because the EEOC seeks damages that require individual proof—is merely a variation of the argument made in *Bemis*.  However, the EEOC is not foreclosed from trying this case under the pattern or practice methodology simply because it seeks punitive and compensatory damages on behalf of the individual claimants.  The EEOC is statutorily entitled to do so, and IPA's position ignores the nature of pattern or practice litigation, which is not based on individual claims.  *See, e.g.*,

*King*, 960 F.3d at 622 (noting that a plaintiff must prove more than individual acts of discrimination to establish a pattern or practice); *Ferguson v. Foster Wheeler Constructors, Inc.*, No. 98 C 1601, 1999 WL 528200, at *2 (N.D. Ill. July 13, 1999) ("To force the EEOC to prove each individual claim would be contrary to the way that pattern or practice claims operate.").

While IPA's contention that the EEOC cannot seek section 1981a relief in a pattern or practice case is clearly misplaced, its second argument—that the EEOC must present individualized proof in order to recover section 1981a damages—has merit. Under *Teamsters*, a pattern or practice finding allows a court to only award "prospective relief."[19] 431 U.S. at 361. The court therefore agrees with IPA that the EEOC is required to do more than simply prove that IPA had a policy of tolerating sexual harassment if it wishes to recover section 1981a damages. To its credit, the EEOC does not dispute this

_____

[19] IPA also points to *Lemon v. International Union of Operating Engineers*, 216 F.3d 577 (7th Cir. 2000) and *Jefferson v. Ingersoll International, Inc.*, 195 F.3d 894 (7th Cir. 1999) to support its argument that the EEOC must offer individualized proof to recover under section 1981a. In both *Lemon* and *Jefferson*, a class of plaintiffs brought suit under Title VII alleging race discrimination and seeking equitable relief under section 706 as well as individual damages pursuant to section 1981a. *Lemon*, 216 F.3d at 579-81; *Jefferson*, 195 F.3d at 900. In each case, the district court had certified the class pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, which deals with class actions seeking "injunctive relief . . . with respect to a class as a whole." Fed. R. Civ. P. 23(b)(2); *see Lemon*, 216 F.3d at 579; *Jefferson*, 195 F.3d at 900. In each instance, the Seventh Circuit vacated the district court's decision. *Lemon*, 216 F.3d at 582; *Jefferson*, 195 F.3d at 899. The Seventh Circuit noted that section 1981a damages "depend[] on an individualized analysis of each class member's circumstances." *Lemon*, 216 F.3d at 581. The court therefore held that a district court may not certify a case in which the plaintiffs seek both equitable relief and section 1981a damages as a class action under Rule 23(b)(2) unless the individual damages sought are "merely incidental to the equitable relief." *Jefferson*, 195 F.3d at 899. If the damages are "more than incidental," the court may either certify the class under Rule 23(b)(3), which requires that questions of fact or law common to the class predominate over individual issues, or bifurcate the proceedings by certifying a Rule 23(b)(2) class for equitable relief and, if possible, a Rule 23(b)(3) class for damages. *Id.* Thus, both *Lemon* and *Jefferson* were concerned with the effect of section 1981a damages on class certification issues under Rule 23, a rule which does not apply to the EEOC. This fact was not missed in *Jefferson*; the court noted that the EEOC had moved to intervene, which could moot the Rule 23 issue if the EEOC chose to seek the same relief as the individual plaintiffs. 195 F.3d at 899-900. Neither *Lemon* nor *Jefferson* (or, to the court's knowledge, any other Seventh Circuit case) considered the issue here—how to address section 1981a damages in a case where the EEOC seeks equitable relief under the pattern or practice theory. However, the court agrees with IPA that *Lemon* and *Jefferson* are relevant to the limited extent that they indicate the Seventh Circuit's general concern with how class-based equitable relief and individual damages should be treated in the same case.

point, but instead readily concedes that if it prevails as to the pattern or practice aspect of this case, it will still have to establish that the individual claimants are entitled to section 1981a damages. This concession is fine in the abstract, but it offers little to help the court decide how to try this case. The problem—which IPA's concern over section 1981a damages throws into sharp relief—is that neither IPA nor the EEOC has presented focused argument regarding *what* the EEOC must prove in order to prevail on its pattern or practice theory and receive class-wide equitable relief, and *what more* it must prove in order to establish that the individual claimants are entitled to damages under section 1981.

The precise question for the parties, then, is how *Teamsters* should apply to this case. It is not enough to state the obvious point that *Teamsters* provides the framework for a pattern or practice action, as the EEOC has done thus far. As discussed above, *Teamsters* was a race discrimination case in which it was alleged that the employer had a policy of discriminating against minorities when making hiring and promotion decisions. *Id.* at 328-29. Once it was established that the employer had a policy of disfavoring minorities (by demonstrating a pattern or practice of such behavior), the primary question remaining at the individual stage was whether each individual claimant had applied for a promotion; if so, it could be presumed—in the absence of evidence to the contrary—that the claimant had been injured by the policy. *Id.* at 361-62.

In this case, however, it is less clear what the effect of a pattern or practice finding should be on the individual claimants. Presumably, the EEOC intends to prove that IPA had a company policy of tolerating sexual harassment by presenting evidence (both statistical and otherwise) of conduct by various perpetrators against various victims that,

taken as a whole, demonstrates a pattern or practice of allowing such behavior.

Assuming that the EEOC prevails on this aspect of the case, the court has concerns about

what presumptions such a finding would require. In a hostile work environment sexual

harassment case, the plaintiff must show that the harassment to which she was exposed

was so severe or pervasive—both objectively and subjectively—that it altered the terms

or conditions of her employment by creating a hostile work environment. *See Harris*,

510 U.S. at 21-22. It is not clear why a finding that IPA had a company policy of

tolerating sexual harassment by its employees would make it any more likely that the

harassment suffered by an individual claimant was severe or pervasive enough to be

actionable. In other words, why should the court presume that an individual claimant

suffered severe or pervasive sexual harassment simply because IPA had a policy of

tolerating sexual harassment? Such a presumption might follow if the company had a

policy of *directing* its employees to commit severe sexual harassment, but the EEOC

does not appear to allege such a policy. Perhaps the *Teamsters* presumption is much

more pertinent to the issue of whether the individual claimants can establish a basis for

IPA's agency liability in this case. Stated differently, a finding that IPA knew of and

tolerated sexual harassment in general might support an inference that IPA knew of and

tolerated the harassment to which an individual claimant was exposed.

In any event, the parties have not specifically addressed the application of

*Teamsters* to this case, and it is time for them to do so, the court having resolved their

threshold arguments.[20] Accordingly, the court orders the parties to provide additional

_____

[20] The court notes that the EEOC has cited to several district court cases that have also considered the method of proof for a hostile work environment case brought by the EEOC under the pattern or practice theory. *See Dial*, 156 F. Supp. 2d at 956-58; *U.S. Equal Employment Comm'n v. Foster Wheeler Constructors, Inc.*, No. 98 C 1601, 1999 WL 528200, at *2-3 (N.D. Ill. July 13, 1999); *Mitsubishi*, 990 F.

briefing on the following issues: (1) what, specifically, the EEOC must prove in order to establish that IPA has violated Title VII by allowing a pattern or practice of employment discrimination; (2) what, specifically, the EEOC must prove in order to recover damages under section 1981a on behalf of the individual claimants; and (3) what effect, if any, a finding in the EEOC's favor as to the pattern or practice aspect of this case should have on the individual aspects of this case. The task at hand is to determine the correct way to try this case; the parties should provide comprehensive, thoroughly researched analyses of the specific elements and burdens that will make up the governing legal framework. The court's discussion of *Teamsters* is not, at least at present, a signal of its intentions, but merely of its concerns. The EEOC will file the opening brief, as it is the plaintiff in this case. [21] IPA will be given the opportunity to respond, and the EEOC may then reply. The briefs should be submitted in accordance with the time frame contained in the attached minute order.

*B. The EEOC's Motion to Compel Suzanne Edwards' Deposition is Granted*

In its summary judgment memorandum, IPA spends several pages arguing that the EEOC has engaged in misconduct throughout this litigation; IPA accuses the EEOC of aggressively soliciting claimants without regard to the merits of their claims, inflating minor accusations of wrongdoing, and even fabricating allegations of sexual harassment.

---

Supp. at 1073. The court has reviewed these cases, and is not certain that they properly apply *Teamsters* to the hostile work environment elements set forth by *Harris*; it does not appear that any was tried and none was reviewed by an appellate court. Regardless, the court declines to follow these cases blindly, particularly when the parties have not had the opportunity to provide focused input.

[21] In its response brief to IPA's motions for summary judgment, the EEOC indicates that it intends to renew its motion to bifurcate at the time of the pretrial order. The EEOC notes that *Teamsters* contemplated a bifurcated trial, and that bifurcation has been ordered in similar cases. *See Dial*, 156 F. Supp. 2d at 956-58. As this court noted when it denied the EEOC's original motion to bifurcate, it may be amenable to bifurcating the pattern or practice issues from the individual issues once it has determined what each aspect of this case entails. As the additional briefing ordered in this opinion is directed to that question, the court expects that the EEOC may renew its motion to bifurcate in conjunction with its opening brief.

To support this argument, which may be inflammatory rather than substantial, IPA leans heavily on the affidavit of Suzanne Edwards ("Edwards"). In its response brief, the EEOC points out that it attempted to depose Edwards, but the magistrate judge denied its motion to compel. The EEOC's objections to the magistrate judge's order are currently pending before the court, and, since IPA has put Edwards in issue by relying on her sworn statement in support of its motion for summary judgment, the court rules on the EEOC's objections here as well.

According to the EEOC, it interviewed Edwards regarding sexual harassment at IPA in May of 2004; Edwards was no longer employed by IPA at this time.[22] Edwards told the EEOC that she had knowledge about a sexual assault perpetrated on claimant number 179 by an IPA manager. She also told the EEOC about a variety of sexual comments that had been made to her and other female employees at IPA. Shortly after the interview, the EEOC alleges that Edwards gave it permission to identify her as a class member in this case, and the EEOC did so. The EEOC sent IPA a summary of Edwards' allegations along with those of claimant number 179; Edwards' story corroborated that told by claimant 179 regarding the alleged sexual assault.

In the fall of 2004, the EEOC made several unsuccessful attempts to contact Edwards to schedule her deposition, which had been requested by IPA. On November 4, 2004, Edwards sent the EEOC a letter stating that she did not want to be involved with the litigation and asking that it stop contacting her. The EEOC therefore informed IPA that it was dropping Edwards as a class member. However, the EEOC learned in January

---

[22] Edwards' affidavit states that she was employed by IPA from April of 2002 until late spring of 2004, and once again beginning in the fall of 2004. Nothing in the record indicates whether Edwards is still employed by IPA, but her affidavit, given on February 18, 2005, indicates that she was employed by IPA as of that date. Because IPA has provided nothing to the contrary and continues to rely on Edwards' affidavit, the court assumes that Edwards is still in IPA's employ.

of 2005 that Edwards had actually returned to work at IPA in the fall of 2004.  The EEOC thereafter served Edwards with a subpoena to appear for a deposition and to produce documents related to her compensation at IPA, and IPA moved to quash the subpoena.[23]

On February 9, 2005, the magistrate judge held a hearing on IPA's motion to quash.  At this hearing, IPA represented to the magistrate judge that the Suzanne Edwards in its employ was not the same Suzanne Edwards who had previously been a class member in this case.  The magistrate judge therefore issued an order stating that he would grant IPA's motion to quash Edwards' subpoena unless the EEOC could show that the Suzanne Edwards it sought to depose was the same person it had previously interviewed and made a class member.

Following the motion hearing, the EEOC sent IPA a letter setting forth information regarding the Suzanne Edwards it sought to depose, including the address the EEOC had for her in its files.  In response, IPA did not verify whether this was the same Suzanne Edwards it employed, but instead simply stated that it intended to seek a protective order to prevent Edwards' deposition.  The EEOC therefore filed with the magistrate judge a motion to compel Edwards' deposition.  In IPA's opposition brief to the EEOC's motion, it included Edwards' affidavit—the same affidavit IPA filed with this court along with its motion for summary judgment.  The affidavit makes clear that the Suzanne Edwards employed by IPA in February of 2005 is the same one who was previously one of the EEOC's claimants.  In her affidavit, however, Edwards states that she never witnessed and was never subject to any sexual harassment or discrimination at

---

[23] IPA actually moved to quash the EEOC's subpoena of another witness in addition to Edwards.  The magistrate judge denied IPA's motion as to the other witness, but ultimately granted it as to Edwards.

IPA. According to Edwards, she conveyed this to the EEOC when it began contacting her in the spring of 2004, but the EEOC tried to get her to agree to certain allegations anyway. Edwards also states that she never reviewed or authorized the summary the EEOC sent to IPA regarding her claims, and never agreed to be a claimant in this suit. On the basis of these statements, IPA accused the EEOC of wrongdoing similar to that currently alleged in its summary judgment memorandum, and asked the magistrate judge to deny the EEOC's motion to compel, quash Edwards' deposition, and impose sanctions on the EEOC.[24]

On February 23, 2005, the magistrate judge denied the EEOC's motion to compel. The record reflects that the magistrate judge's decision was based on his belief that Edwards' affidavit indicated she had no information regarding the EEOC's suit against IPA and on a statement by counsel for IPA indicating that IPA had no intention of using Edwards as a witness. Tr. of Proceedings on Feb. 23, 2005, at 6-7. The magistrate judge also denied IPA's motion for sanctions and ordered discovery closed; the discovery deadline had been February 14, 2005.

IPA filed a motion with this court objecting to the magistrate judge's decision denying IPA's requested sanctions.[25] In its motion, IPA raised, along with other arguments, virtually the same allegations of discovery misconduct against the EEOC that

---

[24] IPA's request for sanctions was based not just on Edwards' affidavit, but on its generalized assertion—repeated in its motion for summary judgment—that the EEOC has aggressively solicited claimants and filed claims without proper investigation throughout this litigation.

[25] IPA's motion was actually filed as a renewed motion for sanctions—the court had already considered a motion filed by IPA objecting (on the same grounds) to a prior order by the magistrate judge denying sanctions. This court denied IPA's original motion in its entirety on October 7, 2004, because IPA's objections were "long on outrage and short on the kind of information the court needs to evaluate [the magistrate judge]'s ruling." *EEOC v. Int'l Profit Assocs., Inc.*, No. 01 C 4427, at *2 (N.D. Ill. Oct. 7, 2004) (order denying motion for sanctions). The court noted that if IPA wished the court to consider its motion for sanctions it would have to provide adequate support for its arguments, and listed categories of information IPA should provide in the event it renewed its motion. After the magistrate judge again denied IPA's request for sanctions on February 23, 2005, IPA filed its renewed motion for sanctions with this court.

it has once again raised in its motion for summary judgment—that the EEOC forcefully

solicited claimants and intentionally inflated minor claims in order to bolster its case

against IPA. This court ordered IPA to submit additional briefing because it had

marshaled strikingly little record evidence in support of its arguments.[26]  Ultimately, the

parties filed four rounds of briefs regarding IPA's motions for sanctions. Even with all of

the additional briefing, IPA never provided adequate support for any of its arguments,

and the court denied IPA's motion.

  With the relevant procedural posture framed, it is appropriate to now consider the

EEOC's objections to the magistrate judge's order. A district court's review of a

magistrate judge's ruling on non-dispositive pretrial matters, such as the discovery issue

currently before the court, is governed by the standard set forth in Rule 72(a) of the

Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1)(A) (2006). That standard

provides that the district court "shall modify or set aside any portion of the magistrate

judge's order found to be clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a).

Under the clear error standard of review, a district court should not set aside a magistrate

judge's decision unless "the reviewing court on the entire evidence is left with the

definite and firm conviction that a mistake has been committed." *Fid. Nat'l Title Ins. Co.*

*of New York v. Intercounty Nat'l Title Ins. Co.*, No. 00 C 5658, 2002 WL 1433584, at *2

(N.D. Ill. July 2, 2002) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395

(1948)); *see also F.T.C. v. Pacific First Benefit, LLC*, 361 F. Supp. 2d 751, 754 (N.D. Ill.

2005) (noting that a district court should only reverse the magistrate judge if a "clearly

---

[26] While IPA's failure to support its arguments adequately would have been grounds to deny its motion, the court allowed IPA another chance to submit the categories of information the court had outlined in its order of October 7, 2004. *See EEOC v. Int'l Profit Assocs., Inc.*, No 01 C 4427, at *3 (N.D. Ill. May 31, 2005) (order requiring additional briefing).

apparent mistake" has been made).  This deferential review requires the district court to distinguish the situation in which it *thinks* it would have rendered a different decision from the situation in which it is *firmly convinced* it would have done so, and reverse the magistrate judge's ruling only in the latter instance.  *See Carr v. Allison Gas Turbine Div.*, 32 F.3d 1007, 1008 (7th Cir. 1994).

The EEOC contends that the magistrate judge's order denying its motion to compel Edwards' deposition constitutes clear error for several reasons.  First, the EEOC argues that Edwards has information relevant to its claims because she witnessed and was subject to sexual harassment at IPA and has knowledge about the sexual assault of a current claimant by an IPA manager.  According to the EEOC, Edwards related information about this sexual assault during her interview that the EEOC has been unable to obtain elsewhere—specifically, IPA's knowledge of previous similar actions by the manager in question.  Second, the EEOC asserts that, even under IPA's theory of the case, Edwards has relevant information because IPA continues to rely on Edwards' affidavit to support its argument that the EEOC is exaggerating the wrongdoing that occurred at IPA.  Finally, the EEOC notes that Edwards has knowledge about the social climate at IPA between 2002 and 2004, information that is pertinent to the EEOC's theory that IPA's conduct amounts to an ongoing pattern and practice of sexual discrimination and also to the amount of punitive damages that may be imposed on IPA.  The EEOC's position is that the magistrate judge's decision to quash Edwards' subpoena based on the information contained in her affidavit did not adequately take into account these considerations.

IPA's response focuses almost entirely on the relevancy of any information Edwards may have. IPA argues that Edwards did not experience sexual harassment of any sort during her time at IPA and that the EEOC manufactured the information it says Edwards has; in essence, IPA merely reiterates the statements Edwards made in her affidavit. Thus, IPA contends that Edwards does not have knowledge of anything that would be relevant to the EEOC's claims. IPA also contends that Edwards' claims regarding the EEOC's alleged misconduct in joining her as a claimant are not relevant to its defenses, but only to its motion for sanctions. According to IPA, "IPA's defenses in this cases are multi-faceted some of which will be set forth in IPA's yet to be filed motions for summary judgment." Def.'s Resp. at 3.

The court agrees with the EEOC, and concludes that the magistrate judge erred by denying the EEOC's motion to compel Edwards' deposition. There is no question that Edwards has information relevant to this case, regardless of which party's version of Edwards' story is believed. From the EEOC's perspective, Edwards has information relevant to its claims that it has not been able to discover elsewhere. IPA's argument on this point is not persuasive because it presumes the truth of the statements in Edwards' affidavit—namely, that the EEOC manufactured the information it claims Edwards provided to it and improperly filed a claim on her behalf—something that has been hotly disputed throughout this litigation. Indeed, IPA can hardly argue that the EEOC's alleged misconduct is clearly established at this procedural stage because the court gave IPA multiple chances to prove these allegations in connection with its motion for sanctions and IPA was unable to do so. Because IPA already had several bites at this apple, IPA's argument that Edwards does not have information relevant to EEOC's

claims because EEOC made up the information it claims Edwards gave it during her interview is not well taken.

Even if IPA's view of Edwards' testimony is correct, Edwards still has information relevant to this case. At this point in the litigation, the court simply cannot lend credence to IPA's argument that Edwards' testimony is relevant only to its sanctions motion, not its defenses. In fact, the dominant theme of IPA's defense, at least to this point, seems to be that EEOC has improperly inflated otherwise shaky claims of sexual harassment in order to bolster its case against IPA. IPA has continually relied on Edwards' affidavit to support these assertions. In its motion for summary judgment, IPA raises this argument once again, devoting multiple pages of its memorandum to the EEOC's alleged misconduct. Once again, IPA relies on Edwards' affidavit to support its argument. IPA cannot be heard to say that Edwards' affidavit is not relevant to its defenses in this case when it has put the truth of Edwards' assertions in issue countless times, both before the magistrate judge and before this court. Even if IPA does not intend to call Edwards as a witness at trial, IPA cannot shield Edwards from being deposed when it relies on her claims to support its request for summary judgment.

This is not to say that the court does not understand the magistrate judge's perspective. The discovery process in this case was long and arduous, and the EEOC was seeking to depose Edwards on the literal eve of the discovery cut-off. Nonetheless, the court cannot agree with the magistrate judge's conclusion as to the pertinence of Edwards' deposition. Edwards appears to possess information relevant to this litigation, information that has only become more relevant as this case progresses due to IPA's continued reliance on Edwards' affidavit. Accordingly, the court reverses the magistrate

judge's ruling and grants the EEOC's motion to compel. The court emphasizes that it is *not* reopening discovery, but is allowing only this single deposition. The court also stresses that Edwards' deposition must take place *post haste* given the very late stage at which it is being allowed. The EEOC is therefore ordered to take Edwards' deposition in accordance with the time frame set forth in the attached minute order.

### III. CONCLUSION

For the reasons set forth above, IPA's motions for summary judgment are denied without prejudice. The parties are ordered to submit legal memoranda as specified in this opinion. The court also concludes that the magistrate judge erred by denying the EEOC's motion to compel Edwards' deposition, and therefore grants the EEOC's motion.

ENTER:

_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: March 16, 2007