UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 01 C 4427 |
| v. | ) ) | Judge Joan B. Gottschall |
| INTERNATIONAL PROFIT ASSOCIATES, INC., | ) ) ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION & ORDER**

The Equal Employment Opportunity Commission ("EEOC") brought this employment discrimination suit against International Profit Associates, Inc. ("IPA") under Title VII of the Civil Rights Act of 1964, enacted as amended at 42 U.S.C. § 2000e *et seq.* (2006) and the Civil Rights Act of 1991, 42 U.S.C. § 1981a. The EEOC alleges that IPA engaged in a pattern or practice of sexual harassment and seeks prospective relief on behalf of a class[1] of individual claimants. The EEOC also seeks compensatory and punitive damages on behalf of these individual claimants. This matter is currently before the court on IPA's motion for summary judgment on the EEOC's pattern or practice claim.

---

[1] The EEOC seeks relief on behalf of a large group of claimants, but not on behalf of a "class" within the meaning of Rule 23 of the Federal Rules of Civil Procedure. In pursuing the requested relief, the EEOC does not need to meet the requirements of Rule 23. *See Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 324 (1980). Nevertheless, the court uses the term "class" for purposes of convenience. *Accord EEOC v. Dial Corp.*, 156 F. Supp. 2d 926, 946 n.13 (N.D. Ill. 2001).

# I. BACKGROUND

## A. Summary Judgment

As its number denotes, this case is long in the tooth, and its age is due in large part to its extensive summary judgment history. IPA previously sought summary judgment on the individual claims in this case in a series of motions spanning several years. Prior to addressing the substance of these motions, the court, with assistance from the parties, resolved numerous questions regarding the legal framework of this case. *See EEOC v. Int'l Profit Assocs., Inc.* (*IPA I*), No. 01 C 4427, 2007 WL 844555 (N.D. Ill. Mar. 16, 2007); *see also EEOC v. Int'l Profit Assocs., Inc.* (*IPA II*), No. 01 C 4427, 2007 WL 3120069 (N.D. Ill. Oct. 23, 2007). The court then addressed IPA's motions on the individual claims in three opinions over two years. *See EEOC v. Int'l Profit Assocs., Inc.* (*IPA III*), No. 01 C 4427, 2008 WL 4876860 (N.D. Ill. July 14, 2008); *see also EEOC v. Int'l Profit Assocs., Inc.*, 654 F. Supp. 2d 767 (N.D. Ill. 2009); *EEOC v. Int'l Profit Assocs., Inc.*, 647 F. Supp. 2d 951 (N.D. Ill. 2009).

IPA did not indicate that it would seek summary judgment on the EEOC's pattern or practice claim until a September 2009 status hearing, when it requested leave to file the instant motion. In that hearing, IPA's counsel summarized the issue meriting consideration as follows:

> [H]ere's the issue: . . . you have to look at the volumetrics, the mathematics of the number of people during the period of time in the company who were the subject of harassment versus the amount of people who go through the company to see whether or not it's useful to talk about a pattern and practice.
>
> . . .
>
> Here's the issue I want to brief, your Honor. If we are correct that the principles of this case law apply, and looking at the numbers over the

> period of time, the numbers of people who are plaintiffs is [*sic*] less than a half percent of the total workforce of IPA over the relevant period.
>
> I think that your Honor could, on the basis of that, grant us summary judgment on the pattern and practice.

(Sept. 9, 2009 Tr. 6:3-13, 6:19-7:1.) Counsel repeatedly emphasized that the basis of the proposed motion, which the court granted IPA leave to file, would be a statistical argument, and made no mention of any other basis for summary judgment on the EEOC's pattern or practice claim. However, in the instant motion, IPA goes beyond the statistical argument outlined above to also maintain that the facts and circumstances prevailing at IPA entitle it to summary judgment (even if numbers alone do not) and that, even if a pattern or practice once existed at IPA, the EEOC is not entitled to injunctive relief in this case.

The parties have had nearly a decade to anticipate legal strategy in this case, and several years to anticipate their summary judgment briefs in particular. The court originally required that the parties file dispositive motions by July 15, 2004, nearly six years ago, *see* Doc. No. 210, and has extended that deadline three times on IPA's motion, see Docs. Nos. 285, 289, 303, 306, 367, and several more times to adequately resolve the dozens of individual motions. The parties and the court spent over two years litigating and deciding IPA's individual motions. During this period, IPA had the foresight to request staggered deadlines for those summary judgment motions, *see* Doc. No. 487, but made no mention of any forthcoming "pattern or practice" summary judgment motion.

Given this extended summary judgment schedule and IPA's in-court representation of a limited basis for the instant motion, the court will not consider IPA's fact-intensive non-statistical arguments, and denies the instant motion on those separate

3

asserted grounds. Instead, the court will consider the instant motion only on the ground presented in the September 2009 status hearing–*i.e.*, that the number of individual claimants is too statistically insignificant to present a triable claim for a "pattern or practice" of sexual harassment.

**B.     Section 706**

The court likewise declines to reconsider its previous ruling that the EEOC can maintain its "pattern or practice" claim under section 706, 42 U.S.C. §2000e-5, which reconsideration IPA urged in a still-later filing. In *IPA I*, the court addressed and rejected IPA's contention that the EEOC was not entitled to pursue a "pattern or practice" claim pursuant to section 706. *See IPA I*, 2007 WL 844555, at *9. Since that opinion, other courts have had the opportunity to opine on the same narrow question. IPA calls the court's attention to a recent decision holding that the EEOC cannot pursue a pattern or practice claim under section 706. *See Serrano v. Cintas Corp.*, Nos. 04-40132 & 06-12311, 2010 WL 522846, at *13 (E.D. Mich. Feb. 9, 2010). In reaching its decision, the *Serrano* court summarized this court's opinion in *IPA I* as well as the opinions of two other district courts on the same narrow question, ultimately departing from this court's interpretation of section 706. *Id.*, 2010 WL 522846, at *9-*12.

While the *Serrano* court's opinion is thorough and cogent, this court declines to follow it. In *EEOC v. Scolari Warehouse Markets, Inc.* (*Scolari*), 488 F. Supp. 2d 1117, 1144-46 (D. Nev. 2007), decided just shy of two months after this court's *IPA I* decision, another district court also found that section 706 permits the EEOC to pursue a "pattern or practice" claim, much like it could under section 707. The *Scolari* court reasoned that, while allowing "pattern or practice" claims to proceed under section 706 "creates an

apparent redundancy in the law," given section 707's explicit provision for such claims, the liberal construction given to Title VII and the statute's remedial purpose both counseled the allowance of such claims to pursue under either section. *Id.* at 1144-45. For the *Serrano* court, the *Scolari* holding was unjustified as against "the plain language of §§ 706 and 707." 2010 WL 522846, at *9.

This court disagrees that the plain language of section 706 counsels a different result, as explained in *IPA I*. As further noted in *IPA I*, language from the Seventh Circuit hints that "pattern or practice" cases may proceed pursuant to section 706. *See* 2007 WL 8844555, at *9 (citing *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 899 (7th Cir. 1999) ("[A]s the plaintiff in a pattern-or-practice suit under § 706(f)(1) of Title VII . . .")). Moreover, other courts in this district have allowed "pattern or practice" claims to proceed either under section 706 exclusively or under sections 706 and 707 simultaneously. *See Ferguson v. Foster-Wheeler Constructors, Inc.*, No. 98 C 1601, 1999 WL 528200, at *1-*2 (N.D. Ill. July 13, 1999); *see also Dial Corp.*, 156 F. Supp. 2d at 969. Finally, as the *Scolari* court noted, Title VII has generally been construed liberally to achieve its remedial purpose. In light of the above, and in the absence of appellate-level precedent to the contrary, the court declines to reconsider its previous ruling that the EEOC can pursue its "pattern or practice" claim pursuant to section 706.

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is warranted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

5

Fed. R. Civ. P. 56(c)(2); *see also Brengettcy v. Horton*, 423 F.3d 674, 680 (7th Cir. 2005). All facts, and any reasonable inferences to be drawn from them, must be viewed in the light most favorable to the non-moving party. *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008). Normal burdens of proof remain, however. A plaintiff must set forth facts establishing genuine issues of fact regarding each of the elements essential to its claim, or summary judgment will be entered in favor of the defendant. *See Beard v. Banks*, 548 U.S. 521, 529-30 (2006); *see also Johnson v. ExxonMobil Corp.*, 426 F.3d 887, 892 (7th Cir. 2005).

**B.     Pattern or Practice**

In *IPA II*, the court bifurcated this case into two phases–Phase I, pertaining to the pattern or practice claim, and Phase II, pertaining to the individual claimants–and described the manner of proof by which the EEOC's case would proceed. *See* 2007 WL 3120069, at *17. The court summarized the EEOC's Phase I burden its July 14, 2008 memorandum opinion and order as follows:

> Pursuant to the court's memorandum opinion and order of October 23, 2007 (the "October 23rd Order"), this case has been bifurcated into two phases. *See E.E.O.C. v. Int'l Profit Assocs., Inc.*, No. 1 C 4427, 2007 WL 3120069, at *17 (N.D. Ill. Oct. 23, 2007). In Phase I, the EEOC must establish by a preponderance of the evidence that the sexual harassment that occurred at IPA during the relevant time period, taken as a whole, was so severe or pervasive that a reasonable woman would find the work environment at IPA to be hostile or abusive. *Id.* Furthermore, the EEOC must also demonstrate that IPA knew, or should have known, that regular or systematic sexual harassment was occurring in its offices but did not take adequate steps to address the problem. *Id.* A finding in the EEOC's favor at Phase I will allow the court to award prospective relief under *Int'l Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335-36, 97 S. Ct. 1843, 52 L.Ed.2d 396 (1977), and the court will then proceed to Phase II. *Int'l Profit Assocs., Inc.,* 2007 WL 3120069, at *17.

*IPA III*, 2008 WL 4876860, at *1.

## III. ANALYSIS

In *International Brotherhood of Teamsters v. United States*, the Supreme Court noted that statistical evidence plays an important role in proving a pattern or practice, but also instructed that such evidence is "not irrefutable" and that statistics' "usefulness depends on all of the surrounding facts and circumstances." 431 U.S. 324, 339-40 (1977). Here, IPA puts forth two cases to support its argument that the percentage of its current and former female employees with triable claims for sexual harassment is too low to support a pattern or practice claim. *See EEOC v. Carrols Corp.* (*Carrols*), No. 98 C 1772, 2005 WL 928534 (N.D.N.Y. Apr. 20, 2005); *see also EEOC v. CRST Van Expedited, Inc.* (*CRST*), 611 F. Supp. 2d 918 (N.D. Iowa 2009).

In *Carrols*, the court considered whether the defendant, which operated several hundred Burger King restaurants, had engaged in a pattern or practice of tolerating sexual harassment. 2005 WL 928534, at *1. In so doing, the court compared "the number of allegations to the total number of Defendants' [*sic*] female employees during the relevant period," and found that dividing the former by the latter yielded a percentage of .367%. *Id.*, 2005 WL 928534, at *5. The *Carrols* court declined to set a threshold below which the number claimants would be too statistically insignificant for a court to consider the sum of the claimants' complaints a "pattern or practice" of harassment, stating, "Although the Court cannot articulate a specific threshold for the number of claims that is necessary to establish a pattern of practice of sexual harassment, Plaintiff's allegations fall well short of what is required." *Id.* Given this deficiency, the court granted the defendant's motion for summary judgment. *Id.*, 2005 WL 928534, at *6.

In *CRST*, the district court granted summary judgment to the defendant trucking company on the EEOC's pattern or practice claim. *CRST*, 611 F. Supp. 2d at 958. In a thorough opinion, the *CRST* court discussed the EEOC's burden of proof and the role of statistical evidence in a pattern or practice case. *Id.* at 952-58. The *CRST* court found several failings in the EEOC's evidence, including that "no more than 5.4% of the total 2,701 female drivers employed by CRST" suffered sexual harassment. *Id.* at 953-55. Recognizing that statistical evidence alone does not make or break the EEOC's case, the court disclaimed a bright statistical line, much as the *Carrols* court had done, and even stated that no statistical evidence is necessary to prove a pattern or practice claim. *Id.* at 953-54. The problem the *CRST* court found was that, in addition to not producing sufficient statistical evidence, the EEOC failed to adduce sufficient anecdotal evidence that a pattern or practice of harassment existed. *Id.* at 954-55.

IPA asserts that evidence supports a finding only that .56% of its female employees in the relevant period were harassed.[2] For IPA to be entitled to summary

---

[2] In an effort to make the harassment seem even more insignificant, IPA puts substantial weight (enough to place the statistic in bold typeface) on the fact that the 81 remaining claimants constituted just .16% of all IPA employees, male and female. (International Profit Associates, Inc.'s Motion for Summary Judgment on the EEOC's "Pattern or Practice Claim ("Mot.") 1.) That statistic is meaningless for two reasons. First, the *Carrols* and *CRST* opinions on which IPA relies took the percentage of claimants as a percentage of female employees, not total employees, and IPA's reliance on these cases requires an apples-to-apples comparison. Second, this argument ignores that some workplaces may be male-dominated, meaning that a disproportionately high number of male employees can dilute the percentage of female employees and, in turn, the extensiveness of any sexual harassment occurring at the workplace. Suppose that a company in a traditionally male-dominated industry employs 60,000 employees, only 200 of whom were female, and that, of those 200, 100 have triable claims for harassment. Following IPA, the hypothetical company would be entitled to summary judgment, because only .167% of its overall employees were harassed, despite the fact that fully half of its *female* employees were harassed.

Further dealing in numbers, IPA argues that the number of *harassers* as a percentage of the male workforce, and as a percentage of total workforce, was very minor. Again, IPA's argument cites no legal authority, and makes little sense as a practical matter. A few highly placed harassers could harass all of the female employees that they supervise. In so doing, the harasser-supervisors would both dramatically increase the number of harassed female employees and clearly signal that harassment was the usual procedure rather than the rare occurrence, which, as discussed above, is the crucial inquiry in a "pattern or practice" case.

judgment, then, the requisite threshold of claimants not only must exist, but must be beyond the .367% the *Carrols* court found wanting, the .56% that IPA claims is operative here, and the 5.4% cited by the *CRST* court. (If it is not beyond the *CRST* percentage, that court must have arrived at its conclusion by considering non-statistical matters.) However, as noted above, neither *Carrols* nor *CRST* articulated or cited any such threshold, and the latter expressly disclaimed any threshold. IPA cannot rely on *CRST* or *Carrols* for propositions that the courts themselves renounced, or for propositions that are against the Supreme Court's clear instructions that the utility of statistics depends on the circumstances of the case. *Int'l Bhd. of Teamsters*, 431 U.S. at 339-40.

The statistics in *Carrols* render it particularly inapplicable to this case. The percentage at issue here is larger than that in *Carrols*, making a statistical argument based on that case weak. Moreover, while the difference between the two percentages appears small in the absolute sense, the *percentage* difference between the two is actually quite large; over half again as many claimants exist here as in *Carrols*, relative to the respective employee pools. Further, while the *Carrols* court calculated its percentage with a favorable view of the EEOC's evidence, conceding many of the alleged claimants before it might not survive "a more complete analysis" of the validity of their claims, *see id.*, 2005 WL 928634, at *3 n.8, this court has already determined that the EEOC has identified and produced evidence sufficient to support the trial of 81 claims. Had the parties in *Carrols* litigated summary judgment of the individual claims before the pattern

or practice claim, as this case did, the actual difference between the two percentages may be even greater than indicated above.[3]

The strict numerical application of *Carrols* and *CRST* to this case is flawed not only because the courts themselves counseled against such application, and because the *Carrols* court presented a far different situation than that present here, but because another district court, in *Scolari* (previously discussed in section II.B above) found that a much smaller number of female employees, both in absolute terms and as a percentage, could support a "pattern or practice" claim. In *Scolari*, 17 named plaintiffs represented a class of defendant's current and former employees who alleged that they were sexually harassed. *Scolari*, 488 F. Supp. 2d at 1123-24. Accepting for purposes of the summary judgment motion before it that the 17 named plaintiffs were the only viable claimants out of 5,200 employees,[4] the court nevertheless concluded that the small percentage did not defeat the EEOC's pattern or practice claim. *Id.* at 1131.

Two final notes regarding the limitations of a statistical argument are necessary. First, as the *Scolari* court aptly observed, "There are multiple reasons that people may not step forward, such as out of a fear of losing their job or being singled out for more harassment." *Id.* The *Scolari* court's observations about the nature of the workplace and

---

[3] The *Carrols* court noted in a footnote that plaintiff's claims, taken as true, might reveal that .563% or .902% of female employees suffered harassment, but that such calculations "still fall well short of 1% of Defendant's female employees." 2005 WL 928634, at *4 n.12. That conclusion, expressed in a footnote without citation to authority, is mathematically accurate but neither binding on nor persuasive to this court.

[4] In *Scolari*, the EEOC claimed that it could introduce evidence of "over 500 complaints by women and men attesting to the hostile work environment at Scolari . . . ." 488 F. Supp. 2d at 1130. The court did not indicate whether all 17 of the claimants that it considered for the purposes of the motion before it were female, or whether some were male or whether the 5,200 employees cited by the *Scolari* court constituted all employees, or just female employees. *Id.* Therefore, this court cannot determine whether, as the EEOC claims here, 17/5,200 is the proper calculation of the claimant-to-employee percentage, or whether the denominator is substantially less than that. It is clear, though, that the court both acknowledged that there might have been more than 17 valid claimants and limited its consideration for the motion before it to the 17 in evidence.

10

reports of harassment stand in stark contrast to the *Carrols* court's statement that "the failure to report raises doubts about the existence and seriousness of the alleged harassment." 2005 WL 928634, at *5. This court agrees with the *Scolari* court. Whatever the cause, there can be little doubt that employees that suffer discrimination, particularly female employees subject to sexual harassment, underreport such mistreatment. *See, e.g.*, Theresa M. Beiner, *Sex Science, & Social Knowledge: The Implication of Social Science Research on Imputing Liability to Employers for Sexual Harassment*, 7 Wm. & Mary J. Women & L. 273, 307 (Winter 2001). Second, in this particular case, the utility of statistics is particularly limited by discovery boundaries. In an eminently reasonable exercise of his discretion, the magistrate judge limited the payroll records that the EEOC could discover to pre-litigation records, meaning that the EEOC could discover only post-filing alleged harassment by means of complaints filed internally within IPA and produced to the EEOC. (*See* Doc. No. 79.) This boundary may have exacerbated any tendency toward underreporting and, in any case, casts further doubt on IPA's proffered statistics.

The court notes these two limitations are not an excuse to depart from IPA's statistics, as the EEOC would do. Indeed, the EEOC has presented only 81 triable complaints; to use another numerator for the percentage at issue would ignore both this court's previous orders and the evidence produced in this case. Moreover, the EEOC does not meaningfully contest that in the period in which IPA employed these 81 complainants, IPA employed 14,545 employees. The limitations described above undermine not the numbers themselves, but their significance as a talisman entitling IPA to summary judgment.

Each court cited by the parties has recognized in some way the limitation, initially noted in the Supreme Court's guidance in *Teamsters*, that statistics' "usefulness depends on all of the surrounding facts and circumstances." 431 U.S. at 339-40. Neither the case law presented nor the facts and circumstances of this case suggest that IPA's proffered statistics, standing alone, entitle it to judgment as a matter of law. Because that is the only ground on which IPA disclosed that it would file this motion, and therefore the only ground on which the court has considered it, IPA's motion is denied it in its entirety.

## IV. CONCLUSION

For the reasons stated above, the court denies IPA's latest motion for summary judgment.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: March 31, 2010